## W. H. VAN MEER v. THE TERRITORY OF OKLAHOMA.

### (Filed September 3, 1904.)

1. **CRIMINAL LAW—Evidence.** Errors committed by a trial court during the progress of the trial of a criminal case will not avail the defendant where such errors were corrected before the case was finally submitted to the jury, and in such circumstances that the defendant could have taken advantage of his rights under the correct ruling; and if a defendant, after he learns that the court has discovered its error and corrected it, fails to take advantage of his rights thereunder when conditions were such that he could have done so, he will be deemed to have waived them.

Van Meer v. Territory of Oklahoma.

2. **MISCONDUCT OF TRIAL JUDGE.** Improper conduct will not be presumed on the part of a trial court, and a case will not be reversed on that ground unless such misconduct is affirmatively made to appear by the record itself, or other proper showing.

3. **NEWLY DISCOVERED EVIDENCE.** A trial court is not compelled to grant a new trial on the ground of newly discovered evidence where the motion is supported by the affidavits of three witnesses, even though no counter showing is made by the Territory. The trial court has a right to consider the whole record of the trial as well as such affidavits, and it should consider the credibility of all of the witnesses and the bearing of the newly discovered evidence, even if true, upon the probable result of another trial; and its action on such matter will be reversed only when it clearly appears that the order is wrong.

(Syllabus by the Court.)

*Error from the District Court of Pawnee County; before Bayard T. Hainer, Trial Judge.*

*Wrightsman & Fulton,* for plaintiff in error.

*P. C. Simons, Att'y General,* and *H. T. Conley, County Attorney of Pawnee County,* for defendant in error.

Opinion of the court by

BURWELL J.: The appellant, W. H. Van Meer and his son, Verdie Van Meer, were indicted and tried for shooting one E. L. Semft, with intent to kill. On the trial the father was convicted and sentenced to a term of six years in the territorial penitentiary, and the son was acquitted. After the defendant had offered evidence to establish that the prosecuting witness' general reputation in the community in which he lived, as to being a violent, quarrelsome man, was bad, the court stated to the jury and counsel that it was not enough to show that the prosecuting witness' general reputation was that of a violent, quarrelsome man, but that the defendant must prove that his general reputation was that

of a vicious, violent, dangerous man; otherwise that the testimony was incompetent.

This was not a correct statement of the rule, but the court immediately after stating this rule eliminated the word "dangerous" and the defendant's counsel proceeded to prove that his general reputation was that of a violent and quarrelsome man; and the court finally instructed the jury in his general charge that the evidence offered by the defendant to the effect that the general reputation of the prosecuting witness for being a violent, quarrelsome man should be considered by them in determining the guilt or innocence of the defendant.

In the light of the whole record, the defendant was given the whole benefit of the testimony offered on the point. It was proven by several witnesses that the son of the prosecuting witness, just the day before the shooting, and while the defendant and his son were hauling a load of wood off of the prosecuting witness' farm, (which was the real cause of the trouble, but which the defendant claimed to have purchased from a railroad off of whose right of way the wood was cut,) pointed a gun at the defendant, and told him that he had orders not to let any one haul wood off of the farm. Several witnesses testified to this fact, but the court, when counsel for the defendant asked concerning this matter of another witness, told the jury that the transaction was incompetent to be considered by the jury, unless it be first shown that the prosecuting witness authorized his son to point the gun at the defendant. The court, however, recognized that it had incorrectly stated the law, and in its instructions told the jury that this testimony was competent, and should be considered by it in determining the reasonable cause for defend-

ant's apprehension of personal injury at and immediately prior to the time of the shooting, and for the purpose of showing the state of mind and feeling between the prosecuting witness and the defendant, but for no other purpose. This instruction was as favorable to the defendant as he even now contends for but he insists that the court by its ruling on the trial prevented him from introducing all of his evidence. This is true; but when the court announced the correct rule, if the defendant was not satisfied with the evidence already in, it was his right to request permission of the court to introduce additional evidence as to that matter, and the court, having excluded a part of such testimony, should have respected such request; but by failing to make the request the defendant waived the right to introduce the additional testimony, and is in no position to complain.

Complaint is made about the remarks of the trial judge during the trial. Everything said by the court might have been said in such a manner as not to prejudice the jury against the defendant. The language used would not necessarily prejudice it or even tend to do so, and if there was anything about the manner in which the words were spoken that might prejudice the defendant, he should have shown that fact by affidavit on his motion for a new trial, as, in the absence of such affirmative showing, improper conduct will not be attributed to a trial court.

The defendant, after his motion for a new trial had been overruled, filed another motion on the ground of newly discovered evidence, and filed in support thereof three affidavits, and the overruling of this motion is assigned as error, there being no counter showing for the Territory. It is

true that this court has held in one case that, in such circumstances, it is the duty of the trial court to grant a new trial; but we are not willing to say that a new trial should be granted simply because the Territory filed no counter-affidavits.   Where a trial judge has seen the witnesses and heard them testify, and is acquainted with the standing and reputation of those making the affidavits, an appellate court should not reverse the action of the trial court, unless, with at least equal knowledge of the witnesses and affiants, it can say that the trial court was not sustained under the showing.

Under the evidence the jury was justified in returning a verdict of guilty.   The shooting was wholly unjustifiable and the defendant's conduct was such as to cast suspicion upon his good faith.   He has been well represented both in this court and in the trial court, by able counsel, who have urged every possible error; but no such error has been shown as will justify a reversal.

The judgment of the lower court is affirmed and ordered carried into execution at the cost of appellant.

Hainer, J., who presided in the court below, not sitting, all the other Justices concurring.