## LON ADAIR v. STATE.

No. A-504. Opinion Filed November 2, 1911.

(118. Pac. 416.)

1. **CRIMINAL LAW—Insanity as Defense—Burden of Proof.** Sanity being the normal and usual condition of mankind, the law presumes that every person is sane; hence the state in a criminal prosecution may rely upon such presumption without proof relative thereto. But when the defendant in a homicide case produces sufficient evidence to raise a reasonable doubt of his sanity, the law then imposes on the state the burden of establishing the sanity of the defendant, the same as any other material fact necessary to warrant a conviction; and if, upon consideration of all the evidence in the case, the jury have a reasonable doubt that the defendant at the time of the commission of the act charged was mentally competent to distinguish between right and wrong, or to understand the nature of the act he was committing, he must be acquitted.

2. **SAME.** Section 2034, Snyder's Stat., provides: "All persons are capable of committing crimes, except those belonging to the

following classes: * * * 4. Lunatics, insane persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness.''

Section 7000 provides: ''An act done by a person in a state of insanity cannot be punished as a public offense.''

**Held,** that the latter section does not in effect modify the former, but is supplemental to it; that under these provisions the test of criminal responsibility for committing an act, which is a crime under the law, is the mental capacity to distinguish between right and wrong as applied to the particular act, and to understand the nature and consequences of such act, or knowing its wrongfulness the defendant is not criminally responsible, if by reason of insanity he did not have the will and mental power to refrain from committing such act.

3. **SAME—Question for Jury.** Insanity as a defense to crime is a question of fact for the jury to determine under proper instructions.

4. **SAME—Insanity as Defense—Question for Jury.** No man should be deprived of his life or liberty under the forms of law, unless the jurors who tried him are able, upon their consciences, to say that the evidence before them, by whomsoever adduced, is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged.

(Syllabus by the Court.)

*Appeal from District Court, Johnston County; A. T. West, Judge.*

Lon Adair was tried for murder and convicted of manslaughter in the first degree, and was sentenced to serve a term of ten years' imprisonment. From the judgment and sentence, he appeals. Reversed.

Plaintiff in error (hereinafter designated the defendant) was by information charged with the murder of one Bud Davis, in Johnston county, on March 3, 1909. That the defendant, a white man, shot and killed Bud Davis, a negro, was admitted. It appears from the evidence that on the Sunday evening prior to the shooting, the father-in-law of the defendant, an old man 65 years of age, and the deceased had an altercation. The defendant interfered, whereupon the deceased, who had a knife in his hands, took off his coat and offered to fight the defendant. Others present prevented the fight. The next morning the defendant on his way to work met the deceased, and they fought; the deceased beat the defendant over the head with a piece of plank until he

said he had enough. The second day following they again met on the street in Tishomingo, and the defendant shot the deceased three or four times with a pistol. From the effects of the gunshot wounds, the deceased died the following day.

The theory of the prosecution was that the defendant committed the homicide in revenge for being whipped, or that at least it was a case of mutual combat. The theory of the defense was that the deceased was the aggressor, and that the defendant shot him in self-defense, and the further defense of insanity was interposed. It was in evidence that the deceased had threatened to kill the defendant, and that the deceased had the general reputation of being a man of quarrelsome and dangerous character. The defendant testified that he had lived in and about Tishomingo for 20 years; that he had been informed of the threats to take his life, made by the deceased; and that when they met the deceased attempted to draw a weapon from the bosom of his shirt, and that he, retreating from the deceased, fired the fatal shots in self-defense.

There was evidence tending to show that the deceased had a pistol at the time he was shot. A large number of witnesses testified to intimate acquaintance with the defendant for several years, and to acts, conduct, and declarations tending to show that he was not a person of sound mind, and giving as their opinion that the defendant was not rational. Several physicians testified that from their acquaintance and observation of the defendant it was their opinion that he was insane. And it was in evidence that he suffered a fracture of the skull when a boy. In rebuttal the state offered evidence tending to show that the defendant was not insane. Two physicians gave opinions, based upon their examination of the defendant, that he was sane, and gave the same answer to a proper hypothetical question.

The jury returned a verdict, finding the defendant guilty of manslaughter in the first degree. The judgment and sentence was entered on June 12, 1909; the petition in error and case-made were filed in this court on November 3, 1909.

*Cornelius Hardy*, for plaintiff in error.

*Smith C. Matson*, Asst. Atty. Gen., for the State.

DOYLE, J. (after stating the facts as above). The principal question presented arises upon the assignments of error based upon instructions given to the jury upon the defense of insanity, and the refusal to give an instruction upon that defense requested on behalf of the defendant.

On the defense of insanity, the court instructed the jury in part as follows:

"Insanity once established is presumed to continue until the contrary is proven. The presumption of the continuance, however, applies only to cases of chronic or confirmed nature. This does not hold good in cases of occasional or intermittent derangement, or of partial insanity. When it is proved that the defendant had lucid intervals, the presumption is that the criminal act was committed during one of them; that is, if it is proved that the nature of the insanity under which the defendant was proved to have labored at some time in the past was only for a time, and at times he was partially insane, and at times he was sane, then it is presumed that the defendant committed the act while in his right mind, and it devolves upon the defendant to show that he was insane at the particular time that the offense was committed, in order to excuse him from the legal consequences of his act. A homicide committed by one who has not sufficient knowledge and understanding to comprehend right from wrong, and understand the consequences of his act, is excusable for his acts while his mind is in this condition; but it is not every derangement of the mind that will excuse one for the commission of a crime. If one has sufficient mind and understanding to know right from wrong regarding the particular act, and is able to understand and comprehend the consequences of his act, the law recognizes him as sane, and holds him responsible for such act. And, if you believe beyond a reasonable doubt that the defendant killed the deceased as charged in the information, with a premeditated design to effect his death, and that at the time of such killing he knew and understood that it was wrong to take the life of the deceased, and was able to understand and comprehend the consequences of such act, then in that event it will be your duty to find the defendant guilty of murder as charged in the indictment. On the other hand, if you should

find that he was not able to know right from wrong, and was not able to understand and comprehend the consequences of his act, then you will acquit him."

On behalf of the defendant, the following instruction was requested:

"Gentlemen of the jury, you are instructed that the defendant has interposed as one of his defenses in this case the plea of insanity. When that defense is interposed, the burden of proof is upon the defendant to introduce sufficient evidence to raise in your minds a reasonable doubt of his sanity. It is not required that the defendant shall prove his insanity to the satisfaction of the minds of the jury by competent evidence beyond a reasonable doubt, or by a preponderance of the evidence. It is sufficient if he only introduces sufficient evidence to raise in your minds a reasonable doubt of his sanity, and when this is done you are instructed that the burden of proof is upon the state to prove the sanity of the defendant by competent evidence, beyond a reasonable doubt, before you would be justified in convicting the defendant as charged in the indictment, and then the burden of proving the sanity of the defendant rests upon the state, like that of proving any other material allegation of the indictment; and if you believe that the state has failed to prove by competent evidence, beyond a reasonable doubt, the sanity of the defendant, and if from all the evidence in the case there is a reasonable doubt in your minds as to the sanity of the defendant, you will return a verdict of not guilty and acquit the defendant. (Refused, and exception allowed. A. T. West, Judge.)"

The important question presented is, What was the proper instruction to give the jury with regard to the degree of proof necessary for them to acquit the defendant on the ground of insanity?

Sanity being the normal and usual condition of mankind, the law in criminal cases presumes the defendant to be sane, and this presumption of law stands until it is overcome by the evidence in the case. On the question as to what is sufficient proof to overcome this presumption, where the defense of insanity is interposed, and the degree of proof necessary to show that the defendant was not criminally responsible for his act,

there has ever been an irreconcilable conflict of opinion. The authorities, American and English, recognize three general rules:

First, that the presumption of sanity can only be overcome by the same degree of proof that is necessary to overcome the presumption of innocence; therefore the burden is upon the defendant to establish his insanity, when the act charged was committed, beyond a reasonable doubt. This doctrine is rudimental, and is now without support, except in one or two jurisdictions.

Second, that the presumption of sanity prevails until it is overcome by a fair preponderance of evidence, and the burden is on the defendant to establish his insanity to the reasonable satisfaction of the jury. Russell on Crimes (9th Ed.) 525; Roscoe on Criminal Evidence (7th Ed.) 975; Foster's Crown Law, 225. This might properly be termed the English doctrine. The leading case in the English courts is *McNaghten's Case,* 10 C. & Finn. 200. McNaghten was tried for the murder of a Mr. Drummond, private secretary of Sir Robert Peel, mistaking him for the Premier himself. He was acquitted on the ground of insanity, and his acquittal caused so much excitement that the question of insanity as a defense in criminal cases was made the subject of debate in the House of Lords, and the opinion of the judges on the law governing such cases was taken. On the question here involved, Lord Chief Justice Tindall, speaking for himself and the other judges, said that the jurors ought to be told in all cases where insanity is set up as a defense that "every man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction." The rule so declared has been accepted as settling the law on this question by the English courts, and with minor modifications it has been approved by the courts of last resort in many of the states. In some of the states this rule is statutory.

Third. If any evidence is introduced tending to prove that the defendant was insane at the time of the commission of the act charged, then the burden of proving the sanity of the defendant devolves upon the prosecution, and the state is bound

6 Cr.—10

to establish his sanity, like all other elements of the crime, beyond a reasonable doubt. This doctrine is distinctively American, and is the rule declared by the Supreme Court of the United States.

The leading case supporting this rule is *Davis v. United States,* 160 U. S. 469, 16 Sup. Ct. 353, 40 L. Ed. 499. In the opinion of the court, fully reviewing the authorities, English as well as American, it is said by Mr. Justice Harlan:

"We are unable to assent to the doctrine that in a prosecution for murder, the defense being insanity, and the fact of the killing with a deadly weapon being clearly established, it is the duty of the jury to convict when the evidence is equally balanced on the issue as to the sanity of the accused at the time of the killing. On the contrary, he is entitled to an acquittal of the specific crime charged, if upon all the evidence there is reasonable doubt whether he was capable in law of committing crime.

"No one, we assume, would wish either the courts or juries, when trying a case of murder, to disregard the human principle, existing at common law and recognized in all the cases tending to support the charge of the court below, that, 'to make a complete crime cognizable by human laws, there must be both a will and an act'; and, 'as a vicious will without a vicious act is no civil crime, so, on the other hand, an unwarrantable act without a vicious will is no crime at all. So that, to constitute a crime against human laws, there must be, first, a vicious will, and, secondly, an unlawful act consequent upon such vicious will,' 4 Bl. Com. 21. All this is implied in the accepted definition of murder; for it is of the very essence of the heinous crime that it be committed by a person of 'sound memory and discretion,' and with 'malice aforethought,' either express or implied. 4 Bl. Com. 195; 3 Inst. 47; 2 Chitty's Cr. Law, 476. Such was the view of the court below, which took care in its charge to say that the crime of murder could only be committed by a sane being, although it instructed the jury that a reasonable doubt as to the sanity of the accused would not alone protect him against a verdict of guilty.

"One who takes human life cannot be said to be actuated by malice aforethought, or to have deliberately intended to take life, or to have 'a wicked, depraved, and malignant heart,' or a heart 'regardless of social duty and fatally bent on mischief,' unless at the time he had sufficient mind to comprehend the criminality or the right and wrong of such an act. Although the killing of one human being by another human being with a deadly

weapon is presumed to be malicious until the contrary appears, yet, 'in order to constitute a crime, a person must have intelligence and capacity enough to have a criminal intent and purpose; and if his reason and mental powers are either so deficient that he has no will, no conscience, or controlling mental power, or if, through the overwhelming violence of mental disease, his intellectual power is for the time obliterated, he is not a responsible moral agent, and is not punishable for criminal acts.' *Commonwealth v. Rogers,* 7 Metc. (Mass.) 500 [41 Am. Dec. 458]. Neither in the adjudged cases nor in the elementary treatises upon criminal law is there to be found any dissent from these general propositions. All admit that the crime of murder necessarily involves the possession by the accused of such mental capacity as will render him criminally responsible for his acts.

"Upon whom, then, must rest the burden of proving that the accused, whose life it is sought to take under the forms of law, belongs to a class capable of committing crime? On principle, it must rest upon those who affirm that he has committed the crime for which he is indicted. That burden is not fully discharged, nor is there any legal right to take the life of the accused, until guilt is made to appear from all the evidence in the case. The plea of not guilty is unlike a special plea in a civil action, which, admitting the case averred, seeks to establish substantive ground of defense by a preponderance of evidence. It is not in confession and avoidance, for it is a plea that controverts the existence of every fact essential to constitute the crime charged. Upon that plea the accused may stand, shielded by the presumption of his innocence, until it appears that he is guilty; and his guilt cannot, in the very nature of things, be regarded as proved, if the jury entertain a reasonable doubt from all the evidence whether he was legally capable of committing crime.

"This view is not at all inconsistent with the presumption which the law, justified by the general experience of mankind, as well as by consideration of public safety, indulged in favor of sanity. If that presumption were not indulged, the government would always be under the necessity of adducing affirmative evidence of the sanity of an accused. But a requirement of that character would seriously delay and embarrass the enforcement of the laws against crime, and in most cases be unnecessary. Consequently the law presumes that every one charged with crime is sane, and thus supplies in the first instance the required proof of capacity to commit crime. It authorizes the jury to assume at the outset that the accused is criminally responsi-

ble for his acts. But that is not a conclusive presumption, which the law upon grounds of public policy forbids to be overthrown or impaired by opposing proof. It is a disputable, or, as it is often designated, a rebuttable presumption, resulting from the connection ordinarily existing between certain facts—such connection not being 'so intimate, nor so nearly universal, as to render it expedient that it should be absolutely and imperatively presumed to exist in every case, all evidence to the contrary being rejected; but yet it is so general and so nearly universal that the law itself, without the aid of a jury, infers the one fact from the proved existence of the other, in the absence of all opposing evidence.' 1 Greenl. Ev. par. 38. It is therefore a presumption that is liable to be overcome or to be so far impaired in a particular case that it cannot be safely or properly made the basis of action in that case, especially if the inquiry involves human life. In a certain sense, it may be true that where the defense is insanity, and where the case made by the prosecution discloser nothing whatever in excuse or extenuation of the crime charged, the accused is bound to produce some evidence that will impair or weaken the force of the legal presumption in favor of sanity. But to hold that such presumption must absolutely control the jury until it is overthrown or impaired by evidence sufficient to establish the fact of insanity beyond all reasonable doubt, or to the reasonable satisfaction of the jury, is in effect to require him to establish his innocence, by proving that he is not guilty of the crime charged."

And in conclusion:

"It seems to us that undue stress is placed in some of the cases upon the fact that, in prosecutions for murder, the defense of insanity is frequently resorted to, and is sustained by the evidence of ingenious experts, whose theories are difficult to be met and overcome. Thus, it said crimes of the most atrocious character often go unpunished, and the public safety is thereby endangered. But the possibility of such results must always attend any system devised to ascertain and punish crime, and ought not to induce the courts to depart from principles fundamental in criminal law, and the recognation and enforcement of which are demanded by every consideration of humanity and justice. No man should be deprived of his life under the forms of law, unless the jurors who try him are able, upon their consciences, to say that the evidence before them, by whomsoever adduced, is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged."

The following authorities support the American doctrine: *Henson v. State,* 112 Ala. 41, 21 South. 79; *Jones v. People,* 23 Colo. 276, 47 Pac. 276; *Guiteau's Case* (D. C.) 10 Fed. 161; *Armstrong v. State,* 30 Fla. 170, 11 South. 618, 17 L. R. A. 484; *Johnson v. State,* 57 Fla. 18, 49 South. 40; *Anderson v. State,* 42 Ga. 9; *State v. Wetter,* 11 Idaho, 433, 83 Pac. 341; *State v. Flemming,* 17 Idaho, 471, 106 Pac. 305; *People v. Casey,* 231 Ill. 261, 83 N. E. 278; *Lilly v. People,* 148 Ill. 467, 36 N. E. 95; *Sanders v. State,* 94 Ind. 147; *State v. Mahn,* 25 Kan. 182; *Commonwealth v. Johnson,* 188 Mass. 382, 74 N. E. 939; *People v. Garbutt,* 17 Mich. 9, 97 Am. Dec. 162; *People v. Finley,* 38 Mich. 482; *Cunningham v. State,* 56 Miss. 269, 21 Am. Rep. 360; *Ford v. State,* 73 Miss. 734, 19 South. 665, 35 L. R. A. 117; *State v. Keerl,* 29 Mont. 508, 75 Pac. 362, 101 Am. St. Rep. 579; *State v. Crowe,* 39 Mont. 174, 102 Pac. 579; *Knights v. State,* 58 Neb. 225, 78 N. W. 508, 76 Am. St. Rep. 78; *Furst v. State,* 31 Neb. 403, 47 N. W. 1116; *State v. Jones,* 50 N. H. 369, 9 Am. Rep. 242; *Faulkner v. Territory,* 6 N. M. 464, 30 Pac. 905; *Walker v. People,* 88 N. Y. 81; *Brotherton v. People,* 75 N. Y. 159; *People v. Taylor,* 138 N. Y. 398, 34 N. E. 275; *Maas v. Territory,* 10 Okla. 714, 63 Pac. 960, 53 L. R. A. 814; *Dove v. State,* 3 Heisk. ('Tenn.) 348; *King v. State,* 91 Tenn. 617, 20 S. W. 169; *King v. State,* 9 Tex. App. 515; *State v. Brown,* 36 Utah, 46, 102 Pac. 641, 24 L. R. A. (N. S.) 545; *Duthey v. State,* 131 Wis. 178, 111 N. W. 222, 10 L. R. A. (N. S.) 1032; *State v. Pressler,* 16 Wyo. 214, 92 Pac. 806; *Hotema v. U. S.,* 186 U. S. 413, 22 Sup. Ct. 895, 46 L. Ed. 1225; *U. S. v. Chisholm* (C. C.) 153 Fed. 808.

On principle we believe the American doctrine declares the true rule on this question. It is best sustained by reason, and is as well sustained by authority as the English doctrine. In homicide cases, section 6854 (Snyder's Stat.) Procedure Criminal, requires a slight qualification of this rule. We will now consider the provisions of the Penal Code and Procedure Criminal pertinent to this inquiry.

Section 2034 (Snyder's Stat.) of the Penal Code provides:

"All persons are capable of committing crimes, except those belonging to the following classes: * * * 4. Lunatics, insane persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness."

Section 7000, Procedure Criminal, provides:

"An act done by a person in a state of insanity cannot be punished as a public offense."

Under subdivision 4 of section 2034, the test of criminal responsibility for committing an act which is declared to be a crime is fixed at the point where the accused has the mental capacity to distinguish between right and wrong, as applied to the particular act, and to understand the nature and consequences of such act.

It is immaterial what standard scientists or medical experts may fix to determine, or by what rules they determine, that a person is in a state of insanity; the accused under this provision of the law is a lunatic, or insane, or of unsound mind, or temporarily or partially deprived of reason, to such an extent as will excuse him from criminal responsibility, only when he is incapable of knowing the wrongfulness of the act committed and charged, and incapable to understand the nature and consequences of such act, and this is a question of fact for the jury to determine under all the evidence in the case.

The term "insanity" as used in section 7000, *supra*, is generic, and comprehends all unsound, diseased, and deranged conditions of the mind or intellect. This section does not in effect modify section 2034, but is supplemental to it; under this section, even if the accused at the time of committing the act charged against him was capable of knowing its wrongfulness, he is not criminally responsible, if by reason of his insanity he did not have the will and mental power to refrain from committing such act. No person can commit an offense who is not legally capable of committing a crime: When the presumptions of law are given their proper effect, there is no good and sufficient reason why

the defense of insanity should be governed by rules as to the burden of proof different from those applicable to any other defense.

The question is discussed with convincing ability by Mr. Justice Burwell, in the case of *Maas v. Territory, supra,* wherein the Supreme Court of Oklahoma Territory held:

"(1) Where one is being tried for murder, and his defense is insanity, lunacy or unsoundness of mind at the time of committing the act, the defendant, in the first instance, is presumed to be sane and of sound mind, and the burden is upon him to introduce sufficient evidence to raise a reasonable doubt as to his sanity. When he has done this the territory, before a conviction can be had, is required to prove his sanity beyond a reasonable doubt."

Our statutes provide that (section 6828, Snyder's):

"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in a case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be acquitted."

It is also provided that (section 6854):

"Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

The burden of proof on any issue is always contrary to the presumption. One who disputes a presumption must take the burden; but to what extent?

Under section 6828, *supra,* the presumption of innocence is a presumption that the defendant did not commit the act which the law makes a crime, and the burden of proof is upon the prosecution. Under section 6854, *supra,* upon a trial for murder, the presumption of innocence has been overcome when the commission of the homicide by the defendant is proven beyond a reasonable doubt; a presumption of guilt then obtains, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the de-

fendant was justifiable or excusable.   Thereupon, under this section of the statute, the burden of introducing sufficient evidence to raise a reasonable doubt of his guilt is upon the defendant.   When he has done this, the burden of proof is upon the state to establish the guilt of the defendant beyond a reasonable doubt.

Every defendant is presumed in law to be sane and capable of knowing right from wrong, and able to choose between them. This presumption, however, upon a trial for murder, is overcome whenever evidence is adduced sufficient to raise a reasonable doubt of the defendant's sanity at the time of the commission of the homicide.   The 'law thereupon imposes upon the state the burden of establishing the sanity of the defendant the same as any other material fact necessary to warrant a conviction; that is, beyond a reasonable doubt.

Section 6854, *supra,* was construed by this court in the case of *Culpepper v. State,* 4 Okla. Cr. 103, 111 Pac. 679, and it was there held that this section of the statute only places upon the defendant the burden of introducing sufficient evidence to raise a reasonable doubt of his guilt of murder, and when the defendant has done this the burden of proof is on the prosecution to prove his guilt on the whole case, beyond a reasonable doubt.

The opinion by Mr. Justice Richardson is a masterly exposition of the law of presumptions.   His language is in part as follows:

"Now, under an express provision of our statutes (section 6854, Snyder's Comp. L. Okla.), where the charge is murder, if the prosecution proves the death of the deceased and the fact that he was killed by the defendant without proving circumstances tending to show either justification or excuse for the defendant, then there devolves upon the latter, if he contends that he was justifiable or excusable, the duty of producing evidence tending to show that fact.   The quantum of evidence necessary for that purpose is fixed by law, and is nominated such as is sufficient to raise a reasonable doubt upon that issue.   The state is not required, in the first place, to prove the absence of justification or excuse.   Unless the evidence on the part of the state tends to show the presence of one or the other, the defendant must

produce such evidence, or a conviction will result. Therefore, when such stage of the proceeding has been reached, and such condition has arisen that the burden of proving circumstances that justify or excuse the homicide, to use the statutory expression, devolves upon the defendant, can it be said that he is then presumed to be innocent? If so, in what does the presumption consist? What is innocence? Innocence consists either in not having committed the homicide at all, or in the existence of facts or circumstances which justify or excuse it. And to be presumed innocent the defendant must be presumed either not to have done the killing, or to have done it under circumstances constituting the act legally justifiable or excusable. Now, when it has been proved beyond a reasonable doubt on the one hand, and admitted on the other, that the defendant committed the homicide, there can no longer be a presumption that he did not do so. Of this the contrary has been proved, has not been denied, but is explicitly admitted. So, if there exists now a presumption of innocence in the defendant's behalf, it consists solely in the presumption that the act was either justifiable or excusable. But here the statute intervenes and says that the burden of proving circumstances that justify or excuse the homicide devolves upon the accused. And by what process of reasoning can the statement that he is presumed to have been excusable or justifiable be reconciled with the statutory provision that the duty devolves upon him in such case to produce evidence tending to show his justification or excuse, failing in which a conviction follows? How can that be presumed which the law says must be proved? And of what value would the presumption be in such case? * * *

"The situation of a defendant charged with murder, who has been proved to have committed the killing, and who seeks to justify or excuse it, is analogous to that of a defendant in a civil action, whose plea is a confession and avoidance. There is no presumption in favor of the existence of matter in avoidance for either; for the duty of producing evidence is upon each of them. The quantum of proof, to be sure, is different; the defendant in the civil action being required to prove the matter alleged in avoidance by a preponderance of the evidence, while the defendant in the criminal action prevails, if upon the whole case he succeeds merely in generating a reasonable doubt of his justification or excuse. But the quantum of proof required has nothing to do with the presumption. The fact that any degree of proof is required of the defendant shows that the presumption is not with him; for it is foolish to say that what is already pre-

sumed must be proved, and that what must be proved is presumed. For instance, the law says that all men are presumed sane and responsible for their acts, and that if a defendant charged with crime contends that he was excusable on account of insanity, the duty rests upon him of producing evidence at least sufficient to raise a reasonable doubt as to his sanity; unless the evidence on the part of the prosecution engenders such doubt. Now, suppose that A. is charged with the murder of B., and his defense is insanity. The killing is proved beyond a reasonable doubt, and no facts indicating either justification or excuse for A. appears from any portion of the evidence on the part of the prosecution. The prosecution then rests. Is A. presumed to be innocent at this stage of the proceedings? If so, it is because he is presumed insane; he is no longer presumed not to have killed B. And if he is still presumed innocent, he, too, may rest here, and an acquittal must follow; for it is absurd to say that a man can be returned guilty, while he is presumed innocent. The same is true if A.'s plea is self-defense, or that the killing was an accident. The statute expressly declares that the burden of proving circumstances that justify or excuse the homicide is on him. The presumption is no longer with him. The law says to him at this stage of the proceeding: 'You have been stripped of your presumption of innocence. Produce evidence of your insanity, your self-defense, or your accident, or suffer the consequences.'

"It is true that the burden of proof, properly so called, is on the prosecution from the beginning to the end of the trial. That is to say, to obtain a verdict of guilty, the prosecution must by evidence exclude every reasonable doubt of the defendant's innocence, and see to it that it stands excluded when the trial ends. If, when the prosecution has concluded its evidence in chief, its character is such that, if unrebutted, a jury under their oaths should and would return a verdict of guilty, then the prosecution has borne its burden to this stage. If the defendant produces no evidence, the trial closes, the prosecution has borne its burden throughout the trial, and a conviction is therefore the result. On the other hand, if the defendant does not rest, but produces evidence sufficient to engender a reasonable doubt, either upon the direct case, or as to the truth of matter set up in avoidance, and the prosecution allows that doubt to remain when the taking of evidence is closed, then the prosecution fails. It has not maintained its burden, for it has not caused a reasonable doubt of innocence to stand excluded when the trial ends. But,

if when the state concludes its evidence in chief it is such that if unrebutted a verdict of guilty should result, the presumption of innocence is then overcome; the defendant cannot then rest and demand an acquittal, because he is presumed to be innocent. That which the presumption of innocence relieved him of so long as it existed, namely, the necessity of adducing evidence, now devolves upon him. The burden of proof which the law created —that of having a reasonable doubt of innocence excluded when the trial ends—is still on the prosecution. The hazard of losing, which the proof on the part of the prosecution created, is on the defendant. The presumption of innocence having been overcome, it is no longer 'his sufficient shield,' 'an ægis of protection' for him. He must now go forward with his evidence, or suffer the consequences.

"But it is said that the presumption must be evidence, and must always abide with the defendant throughout the whole trial; for if the evidence upon any essential issue be equally balanced, or the matter be doubtful, the presumption of innocence turns the scale for the defendant. We do not so understand the law. The quantum of proof necessary to effect persuasion and establish guilt has nothing to do with the presumption of innocence. The law might provide that a mere preponderance of evidence should be sufficient to establish guilt, and still prescribe for the defendant this same presumption of innocence. The law does provide that the defendant's guilt must be proved beyond a reasonable doubt; and if upon the whole case the evidence be equally balanced, or the matter be left doubtful, or even if the evidence preponderates in behalf of guilt, but does not exclude a reasonable doubt of innocence, an acquittal must result. Not, however, because the presumption is thrown into and tips the scales; even if the presumption be evidence, that would be determining the question of guilt by a mere preponderance of the evidence; but an acquittal follows because the prosecution has not complied with that other provision of the law requiring proof of guilt to the exclusion of a reasonable doubt.

"It is also said that the presumption must under all circumstances abide with the defendant throughout the trial, because the jury are not to form any opinion as to guilt or innocence until they have heard all the evidence, and until the matter has been finally submitted to them. It is true that the jury are to keep open minds at all times, ready for the reception and proper weighing of all evidence given before them, the application thereto of the court's instructions, and a consideration of the attor-

neys' argument; but we do not understand that this duty grows out of the presumption of innocence; that it is in any manner dependent upon the presumption for its existence; or that the duty disappears when the presumption has been overcome. On the contrary, we opine that it springs from that provision of the law expressed by the maxim, *'Audi alterem partem,'* and that this same duty would appertain to a jury if the law presumed guilt, instead of innocence, or if it indulged no presumption at all. This duty exists in all cases, both civil and criminal, throughout the whole trial, though successive presumptions may arise in behalf of each party and be overcome, and though the burden of proof, i. e., the duty of producing evidence, may shift time after time. The jury are not to form any opinion as to guilt or innocence until the case has been finally submitted to them for their verdict; but that does not mean that in fact the evidence at a certain stage of the proceeding was not sufficient to establish guilt, so that if the parties had rested there a conviction would have resulted; that the presumption of innocence had not in fact been overcome, and the necessity of adducing evidence had not shifted to the defendant, so that the risk of non-persuasion was on him. Such may have been the case without the jury at that time having so determined. Such is often the case. The present knowledge or ascertainment of that fact is not necessary to its present existence. The court and the parties take cognizance of these matters as the trial progresses, in regulating the production of evidence. If, when the state rests, the defendant is still presumed to be innocent, then he, too, may safely rest, for, as already stated, a jury cannot return a verdict of guilty so long as they presume him innocent; but before he does so, let him be sure, and determine at his peril, that the presumption is still with him.

"Also it is said that the presumption of innocence must abide throughout the whole of the trial and relate to every element of the crime charged; for if the circumstances attending any material act proved at any stage of the proceeding are subject to two different interpretations, one such as to make the act criminal, and the other innocent, the presumption of innocence impels the adoption of that interpretation which favors innocence. We do not agree with this statement. We think the true statement is that, if the state of the evidence is such that a reasonable doubt of the criminality of the act or acts, remains after a consideration of all the evidence in the case, the prosecution has failed. If the minds of the jurors are left hesitating or vacillating be-

tween guilt or innocence, then the rule respecting a reasonable doubt upon the whole case impels an acquittal. The presumption does not; and to say that it does is again to say that the matter is determined by a preponderance of the proof; that the presumption is proof, and creates a preponderance for the defendant.

"The presumption of innocence is the same presumption which obtained in behalf of the accused at common law. In not a single instance has it been amplified by statute. And the statements that it is evidence in behalf of the accused, and that it always abides with him until the verdict is reached, are both judicial innovations, never heard of anywhere, and not found in any text-book or report, until after the beginning of the nineteenth century. Such statements wholly ignore the history of the presumption; they are at variance with the reason and philosophy of it, and they involve the subject in such mysticism and inexplicable confusion that it becomes impossible of application or even comprehension.

"We think the rules contended for are contrary to the whole rationale of a trial; that when the trial of any criminal case is observed throughout its various stages, it becomes apparent that no such rules exist. And when they are given as an instruction they are mere empty words—a verbal formality—devoid of meaning and impossible of application. When the jury go to deliberate upon their verdict, they weigh no presumption; they look to the proof, and only to the proof. They weigh the evidence, and the evidence only. The presumption of innocence fulfilled its purpose when it required the state first to go forward with its evidence and establish a *prima facie* case. Thenceforth it is solely a question of proof and the quantum thereof."

Under the statute, the rule as to the burden of proof in a homicide case, when the defense of insanity is interposed, we hold to be this: The defendant is presumed in law to be sane and capable of knowing right from wrong as to the homicidal act, and to understand the nature and consequences of such act, and, unless the proof on the part of the prosecution is sufficient to raise a reasonable doubt of the defendant's sanity at the time of the commission of the homicide, the burden is upon the defendant, in the first instance, to overcome this presumption by introducing sufficient evidence to raise a reasonable doubt of his sanity when the act was committed. When he has done this,

the prosecution, in order to convict, must prove the defendant's sanity beyond a reasonable doubt; and if, on a consideration of all the evidence, the jury entertain a reasonable doubt as to the defendant's sanity when the act was committed he should be acquitted.

Under this rule the defendant was entitled to have the instruction requested on his behalf given. The instruction correctly presents the law on this question in connection with the right and wrong test, which is imperfectly stated in the second paragraph of the instruction given. The first paragraph of the instruction quoted and given, regarding presumptions when insanity in certain forms have been proven prior to the commission of the homicide, is erroneous. The fact that the proof shows that the defendant at a time anterior thereto was insane does not, in a criminal case, carry with it a presumption that he continues to be in a state of insanity until the contrary is proven.

When the homicide is admitted, justification in self-defense, or excusable by reason of insanity, are almost invariably relied upon as defenses. Both were interposed in the case at bar. The plea of self-defense has often been strained to maintain, as a matter of justification, almost any invasion of certain ideas of natural right, where the popular sentiment of the community is favorable to the so-called "higher law," and it cannot be doubted that the evil resulting from the abuse of this defense has seriously impaired its legitimate value. Neither can it be denied that the defense of insanity is frequently interposed in homicide cases when all other means of avoiding conviction and escaping punishment is hopeless. For this reason, insanity as a defense is almost always viewed with distrust, and it is a popular belief that it is the last resort of desperate criminals. In the state of Washington, this sentiment resulted in the enactment of a law providing that insanity is no defense to a charge of crime. The Supreme Court of that state, in the case of *State v. Strasburg*, 60 Wash. 106, 110 Pac. 1020, 32 L. R. A. (N. S.) 1216, declared this statute unconstitutional, and held that a statute "providing that insanity is no defense to a charge of crime

contravenes Const. art. 1, sec. 3, providing that no person shall be deprived of life, liberty, or property without due process of law, since the criminal intent is an essential element of crime."

Injustice is thus often done to a defendant who, in the judgment of his counsel, has legitimate ground for interposing this defense, and who must therefore at the outset overcome this sentiment of popular distrust. We believe the danger is that indignation at the crime and distrust of this defense will cause jurors to be incredulous of its evidence, and thus the actually insane may be unjustly convicted. This result can only be avoided by fully and justly determining this issue the same as any other fact entering into the question of a defendant's guilt. The idea of punishment, when associated with this unhappy malady, is revolting to the instincts of humanity; every principle of justice and humanity demands that this defense, when legitimately made, be fairly considered, and where the evidence adduced is sufficient to establish that unfortunate infirmity of mind, and a reasonable doubt is thereby raised of the defendant's sanity, the defendant must have the benefit of the doubt.

Modern research has done much to elucidate what was formerly very obscure touching the true pathology of insanity, although no invariable or infallible test of the existence of insanity has ever been found. Says Mr. Bishop:

"Many attempts have been made to discover, what has been assumed to exist, a form of words, termed a test of insanity, which, put into the hands of jurors, can be used by them as a sort of legal yardstick, to measure the evidence and determine whether or not the prisoner had a sufficient length of mental alienation to escape responsibility for his act. But the test has never been found, not because those who have searched for it have not been able and diligent, but because it does not exist." (Bish. New Crim. Law [8th Ed.] sec. 381).

"The symptoms and causes of insanity are so variable, and its pathology so complex, that no two cases may be just alike. The fact of its existence is never established by any single diagnostic symptom, but by the whole body of symptoms, no particular one of which is present in every case." (Ray's Med. Jur. Ins. par. 22).

Persons suffering from this unhappy malady are here placed under the care and custody of the state by laws requiring their confinement in state asylums and hospitals for treatment. The establishing of asylums and hospitals for the insane, and the enactment of laws requiring the compulsory confinement of persons accused and acquitted of crime on the ground of insanity, has in a large measure tended to relax the rigid rules which once governed this defense.

Our statutes provide, sec. 2037, Snyder's:

"When a jury have returned a verdict acquitting a defendant upon the ground of insanity, the court may thereupon, if the defendant be in custody, and they deem his discharge dangerous to the public safety, order him to be committed to the state lunatic asylum, or to the care of such person or persons as the court may direct, till he becomes sane."

Section 6884:

"If the defense is the insanity of the defendant the jury must be instructed, if they acquit him on that ground to state the fact with their verdict. The court may thereupon, if the defendant is in custody and they deem his discharge dangerous to the public peace or safety order him to be committed to the care of the sheriff until he becomes sane."

Under these provisions, it is the duty of the court, if the defendant is acquitted by reason of his insanity, to order his confinement in a state asylum indefinitely, or until it shall be determined judicially that it is safe, legal, and right that he should be discharged. The security of society is thus fully protected.

For the reasons stated, and without considering the other assignments of error presented, the judgment of conviction is reversed, and the cause remanded to the district court of Johnston county, with directions to grant a new trial.

FURMAN, P. J., and ARMSTRONG, J., concur.