## C. W. TITTLE v. STATE.

No. A-6638.   Opinion Filed September 14, 1929.
(280 Pac. 865.)

Poe & Lundy, for plaintiff in error.

Edwin Dabney, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J.    The plaintiff in error, hereinafter called defendant, was convicted in the district court of Tulsa county on a charge of manslaughter in the first degree, and his punishment fixed at a term of 99 years in the state penitentiary.

The information is as follows:

"That Byron Kirkpatrick, the duly qualified and acting county attorney of Tulsa county, Oklahoma, who prosecutes in the name and by the authority of the state of Oklahoma, comes now into the district court for Tulsa county, state of Oklahoma, on this the 14th day of September, A. D. 1926, and gives the court to understand and be informed that C. W. Tittle, on the 4th day of September, A. D. 1926, in Tulsa county, state of Oklahoma, and within the jurisdiction of this court, did unlawfully, willfully, maliciously, and feloniously, without authority of law, and with a premeditated design upon the part of said defendant to effect the death of one L. J. Smith, shoot and discharge into the body of the said L. J. Smith certain leaden or metal bullets from a certain revolver or pistol, loaded with gunpowder and leaden or metal bullets, which he, the said C. W. Tittle, then and there had and held in his hand, then and there and thereby inflicting in and upon the body of the said L. J. Smith certain mortal wounds, from which said mortal wounds the said L. J. Smith did then and there languish and die, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state.

"Byron Kirkpatrick, County Attorney.
"By T. L. Wallace, Deputy."

The defendant alleges that there are certain errors upon which he relies for a reversal of this case, which are as follows:

"(1) Errors occurring at the trial, which will be subdivided into (a) remarks of the court, to which exceptions were taken; (b) the exclusion of evidence offered and inclusion of evidence objected to, which will be set out under this point.

"(2) Error of the court in giving instruction No. 7.

"(3) That the court did not instruct on the entire law of the case.

"(4)   That the verdict and judgment based thereon is cruel and unusual punishment, is excessive, and is the result of passion and prejudice."

The defendant complains first of what he claims was an improper remark of the judge in the trial of the case. The defendant was being cross-examined and was asked:

"Q.   And your wife is of a highly excitable disposition sometimes; is not that true?

"Mr. Poe:   Objected to as incompetent, irrelevant, and immaterial, and not proper cross-examination.

"Mr. Wallace:   This is just preliminary.

"The Court:   Overruled.

"Mr. Poe:   Exception.

"The Court:   He claims they had difficulties and had various troubles and it has been testified that he kicked her out of the bed and a lot of stuff like that.   He may inquire.

"Mr. Poe:   Note our exception."

The defendant strenuously argues that the language of the court, "a lot of stuff like that," was highly improper as a comment on the evidence, and as expressing the opinion that the evidence did not amount to anything. While the remarks of the court were ill-advised, it is not a comment on the evidence, but a statement of facts the court gives for permitting the testimony inquired about by the state.   It was admitted by the defendant, and testified to by his wife, that at different times they had had trouble, that he had threatened to whip her and that on two occasions he had gone for some rope with which to whip her, and that he had kicked her out of bed, and that only a few days before the killing herein they had had a difficulty, and the defendant had left home and had gone

to Galveston, Texas, where he remained for about two days, and after which he returned to his home. Then follows testimony connected with himself and family, in which defendant had tried to show by his wife that he was evidently insane at these different times when he had abused her.

In the case of Van Meer v. Territory, 15 Okla. Cr. 34, 79 Pac. 264, in paragraph 2 of the syllabus, this court said:

"Improper conduct will not be presumed on the part of a trial court, and a case will not be reversed on that ground unless such misconduct is affirmatively made to appear by the record itself, or other proper showing."

In the case of Calloway v. State, 38 Okla. Cr. 418, 262 Pac. 696, in paragraph 4 of the syllabus, this court said:

"It is not every improper remark of a trial court that will justify a reversal; if the remarks are such as might reasonably influence the jury against the defendant, a new trial should be granted; but if, after an examination of the record, it is clear that the verdict is right, and that, even if the remarks had not been made, the jury could not reasonably have returned a different verdict, the conviction will be affirmed."

In ruling upon the admissibility of evidence, trial courts should carefully abstain from commenting upon the weight or effect of testimony; but where such remarks are made, and it is clear that they could not have injured the defendant, they will not constitute ground for new trial. There is nothing in the record to show that the remarks of the court were in any manner intended to mean that the evidence given by the defendant of his insanity was referred to by the court "as stuff." The statement of the court was that a lot of matter had been

introduced by the defendant, showing his disposition at different times, and the court thus refers to it as matters of the same kind or character, and not as a comment upon the weight of the evidence.

The defendant next complains that the court erred in refusing evidence offered, in which the defendant was trying to show peculiar acts of an uncle. There is nothing in the record to show that the uncle was ever insane. Dr. Butler was asked if he remembered any actions, conversations, or experiences with the uncle which would indicate to him that the uncle's mind was deranged or unbalanced. The court sustained an objection to this question, and the defendant then offered to show that, if the witness be permitted to testify, said witness would testify as follows:

"While in talking he would make some very unreasonable statements and before he would get through he would contradict himself."

If the statement that said uncle would make some very unreasonable statements, and before he got through would contradict himself, showed mental derangement, then most of the population of Oklahoma would be fit subjects for the lunatic asylum. While the rule is, "When insanity is relied on as a defense to homicide, great latitude is allowed in admitting evidence having any tendency to throw light on the mental condition of the defendant at the time of the commission of the crime," we are of the opinion that the proof offered did not in any way tend to establish the insanity of the defendant and the evidence was properly excluded. The defendant was permitted to prove that his father had been sent to the asylum for a period of six weeks at one time, that the mother was mentally deficient, and that the defendant had had

spells of epilepsy. After offering this proof, the defendant offered in evidence the history of insanity, the pathological reports, and the conclusion of medical experts, all shown by the records of the insane asylum of the state of Arkansas, all of which was excluded.

It is the contention of the defendant that the exclusion of this evidence was grievous error, and highly prejudicial to the defendant and his defense. The records of the insane asylum of the state of Arkansas were not the best evidence. The defendant had already been permitted to show that his father was confined there, and by the testimony of the doctor who examined him that he was insane. The records offered could add nothing to the uncontradicted testimony of the superintendent of the hospital and the doctor who examined him, and were therefore properly excluded.

The defendant next complains that the court erred in giving instruction No. 7, which reads as follows:

"You are instructed that the law presumes every person to be sane and of sound mind, able to distinguish right from wrong as applied to any particular act, and to understand the nature and consequences of such act, until a reasonable doubt of his sanity is raised by competent evidence, and that it is an essential ingredient of crime that a person, to be guilty of crime, must have, at the time of its commission, sufficient mental capacity and reason to enable him to distinguish between right and wrong as applied to the act that he is then about to do. Although one may be in a diseased or unsound condition of mind, brought about by any condition, such as brooding over wrongs done to him, either real or imaginary, or produced by any other cause, if, at the time such person commits a crime, he knows and understands the nature and character of such act and its consequences, and at that time knows that it is wrong and criminal to commit such act, and has sufficient mind to apply that

knowledge to his own acts, and to know that if he does commit such act he will do wrong and subject himself to punishment, then and in that event such diseased or unsound condition of mind is not sufficient to exempt or exonerate him from criminal liability.

"So, in this case, although the jury may believe from the evidence beyond a reasonable doubt that at the time of the commission of the crime charged in the information, if they find and believe beyond a reasonable doubt that the defendant did commit it as charged, still, if they further find and believe from the evidence beyond a reasonable doubt that at the time said crime was committed the defendant had sufficient mind and reason to know and distinguish right from wrong, and that if he did commit such crime it would be in violation of the law and subject him to punishment, and to know and realize the consequences of his act, then and in that event he connot escape criminal liability under his plea of insanity, and the jury should find him guilty as charged in the information, and fix his punishment as defined to you in these instructions."

In order to get a proper understanding of the instructions of the court, it will be necessary to consider instruction No. 7 in connection with instruction No. 6, which reads as follows:

"You are instructed that the defendant has interposed as a defense in this case the defense of insanity. When the defense is interposed, the burden of proof is upon the defendant, unless the evidence on the part of the state is sufficient for that purpose, to introduce sufficient evidence to raise in your minds a reasonable doubt of his sanity. It is not required that the defendant shall prove his insanity to the satisfaction of the jury beyond a reasonable doubt, or by a preponderance of the evidence. It is sufficient if he introduced sufficient evidence to raise in your minds a reasonable doubt of his sanity, and, when he has done this, you are instructed that the burden of proof is upon the state to prove such a state of sanity

of the defendant as would make him criminally liable, by competent evidence beyond a reasonable doubt, before you would be justified in convicting the defendant of the crime charged in the information, and if you believe that the state has failed to prove by competent evidence beyond a reasonable doubt, the sanity of the defendant, and if, from all the evidence in the case, there is a reasonable doubt in your minds as to the sanity of the defendant, you should give the defendant the benefit of that doubt, and return a verdict of not guilty."

The defendant relies on the case of Adair v. State, 6 Okla. Cr. 284, 118 Pac. 416, 44 L. R. A. (N. S.) 119. In paragraph 2 of the syllabus this court said:

"Section 7000 provides: 'An act done by a person in a state of insanity cannot be punished as a public offense.' Held, that the latter section does not in effect modify the former, but is supplemental to it; that under these provisions the test of criminal responsibility for committing an act, which is a crime under the law, is the mental capacity to distinguish between right and wrong as applied to the particular act, and to understand the nature and consequences of such act, or knowing its wrongfulness the defendant is not criminally responsible, if by reason of insanity he did not have the will and mental power to refrain from committing such act."

The defendant argues that instruction No. 7 is fatally defective, because it did not include the words "the defendant is not criminally responsible if by reason of insanity he did not have the will and mental power to refrain from committing such act." The opinion in this case was written by Judge Doyle.

In the case of Roe v. State, 17 Okla. Cr. 587, 191 Pac. 1048, 1051, in paragraph 1 of the syllabus, in an opinion written by Judge Matson, this court said:

"Under subdivision 4 of section 2094, Rev. Laws 1910, the test of criminal responsibility for committing an act which is declared to be a crime is fixed at the point where the accused has mental capacity to distinguish between right and wrong as applied to the particular act, and to understand the nature and consequences of such act."

In the body of the opinion, on page 598 of 17 Okla. Cr., 191 Pac. 1052, this court said:

"In Alberty v. State, 10 Okla. Cr. 616, 140 Pac. 1025, 52 L. R. A. (N. S.) 248, in construing section 2094, supra, this court held: 'Under this provision, the test of criminal responsibility for committing an act which is declared to be a crime is fixed at the point where the accused has mental capacity to distinguish between right and wrong, as applied to the particular act, and to understand the nature and consequences of such act.'

"Again, in the case of Smith v. State, 12 Okla. Cr. 307, 155 Pac. 699, this court in another opinion, speaking through Doyle, P. J., held: 'The true test of criminal responsibility, where the defense of insanity is interposed, is whether the defendant had sufficient reason to know right from wrong.' To the same effect is the holding in Owen v. State, 13 Okla. Cr. 195, 163 Pac. 548.

"These are the later opinions of this court construing the test of criminal responsibility as applied to all classes of persons alleged to have been insane at the time of the commission of the act, and if there is any apparent conflict between these decisions, and the earlier decisions of this court upon the same subject, the later opinions are controlling, and must be held and construed to overrule the doctrine announced or the rule laid down to the contrary, if any, in Adair v. State, 6 Okla. Cr. 284, 118 Pac. 416, 44 L. R. A. (N. S.) 119."

It will thus be seen that, in the case of Roe v. State, supra, this court overruled the doctrine announced in Adair v. State, supra, that "the defendant is not criminally responsible, if, by reason of insanity, [he] did not

have the will and mental power to refrain from the committing such act."

In the case of McNeill v. State, 18 Okla. Cr. 1, 192 Pac. 256, this court re-stated the rule laid down in Roe v. State, supra, as the true test of the insanity of the defendant. These opinions were both written by Judge Matson and concurred in by Judge Doyle.

In the case of Sloan v. State, 25 Okla. Cr. 23, 218 Pac. 717, 720, in an opinion by Judge Doyle, in the body of the opinion, this court said:

"The doctrine that an irresistible impluse resulting from a disordered mind relieves from criminal responsibility, though the accused was capable of distinguishing between right and wrong with respect to the act in question, is not recognized in this jurisdiction. The capacity to know right from wrong, and to know that the particular act being committed is wrong, is recognized as the correct rule in Oklahoma to test the question of criminal responsibility. Roe v. State, 17 Okla. Cr. 587, 191 Pac. 1048; Snodgrass v. State, 15 Okla. Cr. 117, 175 Pac. 129; Owen v. State, 13 Okla. Cr. 195, 163 Pac. 548; Smith v. State, 12 Okla. Cr. 307, 155 Pac. 699; Alberty v. State, 10 Okla. Cr. 616, 140 Pac. 1025, 52 L. R. A. (N. S.) 248. In Roe v. State, supra, it is said:

" 'The statute of this state does not recognize the doctrine that one may be so possessed with an uncontrollable impulse as to compel him to do what he knows to be wrong and a crime, and yet be relieved from all criminal responsibility. A condition might be conceived of an uncontrollable insane impulse sufficient to relieve one of criminal responsibility under our statute; but this would only arise when the diseased condition of the accused's mind was such as to destroy the power of the accused to comprehend the nature and consequences of the particular act, and to know that it was wrong at the time of its commission'."

It will thus be seen that in all the decisions of this court following the case of Roe v. State, supra, this court has repudiated that part of paragraph 2 of the syllabus in Adair v. State, which defendant alleges should have been included in instruction No. 7. Instructions Nos. 6 and 7 as given in this case are a true and correct statement of the law of insanity. In order that there may be no further misunderstanding of the position of this court upon the question, the language, "the defendant is not criminally responsible if by reason of insanity he did not have the will and mental power to refrain from committing such act," is expressly overruled as not being a part of the true test of criminal responsibility in a defense of insanity.

Finally the defendant urges that the verdict was the result of passion and prejudice and was cruel and uncertain. The verdict of the jury reads as follows:

"We, the jury, drawn, impaneled, and sworn in the above entitled cause, do upon our oaths find the defendant guilty of the crime of manslaughter in the first degree as charged in the information herein, and fix his punishment at confinement in the state penitentiary for 99 years.

"C. M. Bell, Foreman."

There is nothing uncertain about this verdict. It finds the defendant guilty of manslaughter in the first degree, and fixes his punishment at confinement in the state penitentiary for 99 years.

The evidence on the part of the state discloses that the defendant, while in a drunken condition, was temporarily compelled to remain away from his home, on account of the fact that the deceased and his family were in the home and refused to vacate, and that the defendant's wife was staying in the home, and the defendant

298

staying at another and different place; that about the hour of midnight the defendant went into his home and called to the deceased, and when deceased came into the room where the defendant was standing that the defendant immediately began shooting deceased, and continued to shoot until five shots had been fired into the body of the deceased.

The question of the insanity of the defendant was fully and fairly submitted to the jury, both by the evidence and the instructions, and the jury found this issue against the defendant. It is not possible, in a trial of a case of this magnitude, to prevent error from creeping into the record, but the errors complained of by the defendant are not sufficient to require a reversal of this case. The verdict of the jury is definite, and the fact that they fixed the punishment at 99 years is not sufficient to show that it is either cruel, inhuman, or uncertain. In the light of all the evidence in the case, the verdict is one that could have been justly returned by the jury.

For the reasons stated, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.