M. M. ARMS v. STATE.

No. A-7511. Opinion Filed Aug. 29, 1930.
Rehearing Denied Oct. 27, 1930.
(292 Pac. 76.)

Leahy, Macdonald, Maxey & Files, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was convicted of manslaughter in the first degree in the district court of Tulsa county and his punishment fixed at 25 years in the state penitentiary.

Briefly stated, the record discloses that prior to the homicide a state of ill will had arisen on the part of defendant against deceased Winans.   This ill will arose on account of attention to or association by Winans with the wife of defendant, who was a full-blood Osage Indian who had previously been married to an Indian, one Peter Big Horse, by which prior marriage there were three children.   On several occasions, the deceased was in the company of the wife of defendant, generally at her home in the absence of her husband, and furnished her whisky with which she became intoxicated.   Prior to the homicide, defendant on two occasions had made a personal assault upon Winans.   At the time of the homicide, Winans was at his place of business, a garage in the city of Tulsa, sitting on a small box inside the door, talking to some friends.   He was unarmed and was leaning forward. One of the other men present was sitting in a chair, leaning against the face of the door.   Defendant came to the door, put his pistol just back of the man leaning against the door, and without saying a word shot Winans three times in the head, inflicting wounds from which he died in a few minutes.   The defense interposed is temporary insanity and self-defense.   In support of the plea of temporary insanity defendant testified at length of his marriage and the circumstances of the deceased's relation with his wife and of his prior difficulties with deceased, of the mental effect upon him of this domestic trouble, and that at the time he shot deceased, deceased made a

movement as if to pull a gun and he fired in self-defense. Several witnesses for defendant testified to some extent corroborating his claim of temporary insanity.

The case was closely tried and is well briefed. Numerous assignments of error are presented. It is first argued that the court committed prejudicial error in permitting the county attorney to amend the information before the jury was called by changing the name of the deceased from Bernard von Winans to Boyd B. Winans. This was not error. Our statute permitting the amendment of informations is extremely liberal. Section 2512, Comp. St. 1921. It is, of course, not permissible to allow an amendment to change the nature of the offense or to charge a different offense. Otherwise an information may be amended in matters of either form or substance when it can be done without prejudice to the rights of the accused. The identity of the person killed was not in dispute. It is not claimed that Boyd B. Winans was a different person from Bernard von Winans. For illustrative cases amending as to names and dates, see People v. White, 47 Cal. App. 400, 190 Pac. 821; Carroll v. State, 24 Okla. Cr. 26, 215 Pac. 797; Elkins v. State, 29 Okla. Cr. 175, 233 Pac. 491; Leyerle v. State, 31 Okla. Cr. 179, 237 Pac. 871; Smith v. State, 34 Okla. Cr. 318, 246 Pac. 883; Weathers v. State, 35 Okla. Cr. 292, 250 Pac. 805; Orum v. State, 45 Okla. Cr. 193, 282 Pac. 889.

Several assignments are directed to the admission of testimony for the state. The items complained of are varied. In one instance it is in reference to the financial responsibility of deceased; this appears to be immaterial, though possibly it was offered to rebut the inference that deceased pursued the wife of defendant because of her having resources as a member of the Osage Tribe of Indians. In another instance it is evidence that tended to

show the wife of defendant probably made overtures to deceased. In another, it is to show that at the time of the homicide the pistol owned by the deceased was in his room. It is not necessary to enumerate all these specific items. Some of them are on the border line of admissibility, but none of them could have been materially prejudicial. They fall within the harmless error provisions of our statute. Section 2822, Comp. St. 1921.

Several assignments are directed to the failure of the court to sustain objections to cross-examination of defendant's witnesses. In the main these objections are to questions propounded witnesses who had testified to circumstances tending to prove defendant irrational or insane at a time just preceding the homicide. The state questioned these witnesses rather closely, touching the actions, conduct, and demeanor of defendant. This cross-examination extended also to an expert witness for defendant. The court, properly, was fairly liberal to both the state and the defendant. While the defense of temporary insanity is viewed with some distrust by the laity, yet the law is that if insanity to the degree fixed by the law exists, it is a complete defense to a charge of crime. One who pleads insanity has the right to present the applicable evidence without undue restriction, but since the evidence of insanity often is largely a matter of opinion, generally depending on the testimony of witnesses related to or closely associated with the person accused, both the state and the defendant should be permitted to test the knowledge and good faith of the witnesses by a liberal cross-examination. We have examined with care the various items of the record to which these assignments relate and perceive nothing materially erroneous.

A group of assignments are based on the refusal of the court to give requested instructions defining the law

applicable to the defense of insanity. These requests are in substance that where the defense of insanity is interposed to a charge of crime, the test of criminal responsibility for committing an act which is a crime under the law is the mental capacity of the accused to distinguish between right and wrong, as applied to the particular act, and to understand the nature and consequence of such act, or, "knowing its wrongfulness, the defendant is not criminally responsible if by reason of insanity he did not have the will and mental power to refrain from committing such act." This is the doctrine of what is sometimes designated as irresistible or uncontrollable impulse. That is, that one may be so moved by insane impulse that he is impelled to do what he knows to be wrong and to be a crime, and which will subject him to the penalty of the law and yet be relieved from criminal responsibility. This doctrine finds some support in the many reported cases where insanity has been interposed as a defense to crime. In the case of Adair v. State, 6 Okla. Cr. 284, 118 Pac. 416, 44 L. R. A. (N. S.) 119, in the latter part of syllabus 2, after stating that the test of criminal responsibility for committing a crime is the mental capacity to distinguish between right and wrong, etc., it is further said: "* * * Or knowing its wrongfulness the defendant is not criminally responsible, if by reason of insanity he did not have the will and mental power to refrain from committing such act." This doctrine appears to be followed also in the case of Litchfield v. State, 8 Okla. Cr. 164, 126 Pac. 707, 45 L. R. A. (N. S.) 153. It does not appear to have been approved in any later case, but in subsequent cases the rule is announced without qualification that the true test of criminal responsibility is whether defendant had sufficient reason to know right from wrong as applied to the particular act and to understand the nature and consequences of such act. Alberty v. State, 10 Okla. Cr. 616,

140 Pac. 1025, 52 L. R. A. (N. S.) 248; Smith v. State, 12 Okla. Cr. 307, 155 Pac. 699; Roe v. State, 17 Okla. Cr. 587, 191 Pac. 1048, 1052; McNeill v. State, 18 Okla. Cr. 1, 192 Pac. 256; Turner v. State, 43 Okla. Cr. 380, 279 Pac. 525; Tittle v. State, 44 Okla. Cr. 287, 280 Pac. 865. The Roe Case, supra, in effect overrules that part of the Adair Case which recognizes irresistible impulse as a defense to crime, saying:

"The statute of this state does not recognize the doctrine that one may be so possessed with an uncontrollable impulse as to compel him to do what he knows to be wrong and a crime, and yet be relieved from all criminal responsibility. A condition might be conceived of an uncontrollable insane impulse sufficient to relieve one of criminal responsibility under out statute; but this would only arise when the diseased condition of the accused's mind was such as to destroy the power of the accused to comprehend the nature and consequences of the particular act, and to know that it was wrong at the time of its commission."

In the Tittle Case, supra, in syllabus 3, this court expressly overrules this doctrine; it is held:

"That part of paragraph 2 of the syllabus in the case of Adair v. State, 6 Okla. Cr. 284, 118 Pac. 416, 44 L. R. A. (N. S.) 119, which reads as follows: '* * * or knowing its wrongfulness, the defendant is not criminally responsible, if by reason of insanity he did not have the will and mental power to refrain from committing such act,' is expressly overruled, as not being part of the true test of insanity."

The court did not err in refusing to instruct the doctrine of irresistible or uncontrollable impulse. In other particulars, the instructions fairly state the law and the contention is untenable.

It is also urged that there was misconduct of the juror House. This misconduct was first called to the

attention of the court in the motion for a new trial and is, in substance, that in the course of the trial, when Dr. Adams testified that he considered defendant sane the juror smiled and winked at Tom Wallace, assistant county attorney, and the belief that this juror exercised improper influence on the other members of the panel. It is not made to appear this was unknown to defendant's counsel before the conclusion of the trial; to the contrary, the inference is that it was known to counsel before the conclusion of the trial. Where there is misconduct of a juror which comes to the knowledge of a counsel during a trial, they should make such facts known to the court, and where a defendant withholds such knowledge until after verdict, he is deemed to have waived it unless such misconduct amounts to fundamental error. Tinney v. State, 19 Okla. Cr. 126, 201 Pac. 819.

Other assignments are presented in the brief which are not discussed. They have not been overlooked. Upon the entire record, we are convinced that defendant had a fair trial, and that the evidence amply sustains the verdict and judgment, and that the punishment assessed is not excessive.

The case is affirmed.

DAVENPORT and CHAPPELL, JJ., concur.