# JOHN R. TURNER v. STATE.

No. A-6647.  Opinion Filed July 3, 1929.
(279 Pac. 525.)

John L. Ward and L. O. Todd, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.  The plaintiff in error, hereinafter called defendant, was convicted in the district court of Tulsa county on a charge of manslaughter in the first degree, and sentenced to be imprisoned in the state penitentiary for eight years.  Motion for new trial was filed, overruled, and exceptions saved, and the case is now on appeal in this court.

The defendant complains, first, that the trial court erred in receiving the verdict.  The case was tried by Hon. A. C. Brewster, a district judge, who was not a resident district judge, but who was assigned by order of the Chief Justice of the Supreme Court to hold a term of court in Tulsa county beginning on the 15th day of November, 1926, and lasting for thirteen days.  The jurisdiction to hold court in Tulsa county under said order expired at midnight on the 27th day of November, 1926. The trial of this case commenced on November 26, 1926, and was concluded by the return of the verdict at midnight on November 27, 1926.  On the 27th day of Novem-

ber, 1926, the Chief Justice of the Supreme Court issued another order assigning the said Honorable A. C. Brewster to hold court at Tulsa for a period of three days beginning November 28, 1926. There is a dispute between the state and the defendant as to whether or not the verdict of the jury was actually received in open court before midnight on the 27th day of November, 1926. The case-made at page 523, has this recital:

"Thereupon, pursuant to the order of court, the jury retires until twelve o'clock midnight, November 27, 1926, at which time court is reconvened with the defendant present in court and the jury present in open court, and thereupon the following proceedings are had, to wit:

"The Court: Gentlemen of the jury, have you agreed upon a verdict in the case?

"The Foreman: We have."

In our view of the case, it is immaterial whether this verdict was actually received before or soon after 12 o'clock midnight of November 27th. In the case of Layne v. State, 23 Okla. Cr. 36, 212 Pac. 328, this court said:

"A special or substitute judge authorized to hold court outside of his district, by virtue of an order made by the Chief Justice of the Supreme Court ending on a Saturday night, supplemented by another order beginning on Monday following, under circumstances recited in the opinion, was probably a de jure judge during the intervening Sunday. * * *

"This court may look beyond the express terms of the Constitution (sec. 9, art. 7), and orders made pursuant thereto, to ascertain the true intent and object of the lawmakers and of the judge acting thereunder relating to the powers of a special judge, and where such intent and object is manifestly to carry out the lawmakers' intent an inadvertent omission of Sunday from the period in which the special judge is authorized to hold

court, will not deprive such special judge of supervising power over court officers during this particular Sunday."

The defendant next complains of the misconduct of the county attorney in calling in the presence of the jury, one Lydia Turner, the wife of the defendant, as a witness for the state. It appears from the record that the only thing the assistant county attorney did, in the presence of the jury, that it is contended constituted such misconduct as to deny this defendant a fair and impartial trial, was to ask the bailiff to call as the next witness for the state, one Lydia Turner. It further appears that the jury was excused, and that the witness Lydia Turner was placed upon the witness stand, and that as soon as it was made to appear that she was still the wife of the defendant, the court refused the state permission to use her against the defendant. Did the mere calling of her name, as a witness for the state, by the county attorney, in the presence of the jury constitute such official misconduct on his part as to require this court to reverse this judgment? There was no persistent effort here to get incompetent testimony before the jury, nor to have an incompetent witness testify. It is objectionable practice for the state in a criminal case to call a wife to testify against her husband, and thereby compel him to object to such witness testifying. Misconduct of this kind will be considered and construed by this court in reference to the evidence, and, if it appears that the alleged misconduct probably determined the verdict, a new trial should be granted. In this case it is apparent that the defendant was at least guilty of manslaughter under his own testimony in the case. The evidence of the defendant's guilt of the crime of manslaughter is such that this judgment should not be reversed except for error of the most fundamental and prejudicial nature. A careful ex-

amination of the whole record discloses that an honest jury could have returned no other verdict except guilty. We are therefore of the opinion that the calling of the name of the wife of the defendant as a witness for the state, while improper, is not sufficient misconduct to require a reversal of this case.

The defendant next complains of the bias and prejudice of the trial judge in the conduct of the trial. This assignment can be disposed of with the remarks used by this court in disposing of a similar contention in the case of Davis v. State, 35 Okla. Cr. 86, 249 Pac. 165, wherein the court said:

"It is contended that certain remarks of the court and of the county attorney were prejudicial. Some of the remarks complained of were invited, if not encouraged, by the defendant's counsel. To some others there were no exceptions taken. Considering all that transpired at the trial, we think the court and prosecuting attorney exercised a remarkable degree of restraint and caution, and in this regard committed no prejudicial error."

Defendant next complains of the error of the court in rejecting certain testimony tendered by the defendant. Defendant has incorporated in his brief numerous excerpts from the record disclosing adverse rulings of the trial court on testimony tendered by the defendant. Defendant advances no argument and cites no authority to show in just what respect this proffered evidence was competent. The burden is upon the appellant, not only to establish error, but also that the error, if any, was prejudicial to him. Killough v. State, 6 Okla. Cr. 311, 118 Pac. 620.

Rule 7 of this court requires the full substance of the evidence rejected stating specifically the objection and also a brief of the argument exhibiting a clear statement

of the point of law or fact to be discussed, with a reference to the pages of the record and the authorities relied upon in support of each point. Counsel gave no reasons why the rulings were erroneous, and cites no authorities in support thereof. For the reasons stated, the assignment of error presents no question for consideration by this court.

The defendant next complains that the court erred in refusing to let the defendant testify that, at the time he shot the deceased, the defendant was "in a manner insane." Under this assignment, the only argument advanced that the trial court's ruling was erroneous is that the issue of insanity may be introduced under a plea of not guilty, and that no special plea of insanity is necessary under our criminal procedure. Suppose that is true, which we are not now deciding, and suppose that the trial court gave no good reasons for excluding this proffered testimony, that would be no reason for reversing this judgment if in truth the ruling of the trial court was correct. Proof that the defendant was "in a manner insane" is meaningless. In order to meet the requirements of our statute (Comp. St. 1921, § 1511, subd. 4), the proof of insanity must be such as to show the accused lacked mental capacity "to distinguish between right and wrong as applied to the particular act, and to understand the nature and consequences of such act."

In the case of Adair v. State, 6 Okla. Cr. 284, 118 Pac. 416, 44 L. R. A. (N. S.) 119, this court said:

"Sanity being the normal and usual condition of mankind, the law presumes that every person is sane; hence the state in a criminal prosecution may rely upon such presumption without proof relative thereto. But when the defendant in a homicide case produces sufficient evidence to raise a reasonable doubt of his sanity, the law

then imposes on the state the burden of establishing the sanity of the defendant, the same as any other material fact necessary to warrant a conviction; and if, upon consideration of all the evidence in the case, the jury have a reasonable doubt that the defendant at the time of the commission of the act charged was mentally competent to distinguish between right and wrong, or to understand the nature of the act he was committing, he must be acquitted."

Where the defendant in a homicide case fails to produce sufficient evidence to raise a reasonable doubt of his sanity, he cannot be heard to complain of any alleged errors in the instructions of the trial court on the question of insanity. There was no competent evidence offered by the defendant that tended to raise the issue of insanity. If this proffered evidence tended to prove anything, it was lack of deliberation and premeditation, and, in view of the fact that defendant was not convicted of murder, its exclusion becomes harmless under any contingency.

Defendant next complains of the error of the trial court in refusing to give defendant's requested instruction on the question of insanity. There being no competent evidence of insanity in this case, there was therefore no necessity to instruct on that issue.

Finally, it is contended that the trial court erred in overruling the defendant's challenge to the integrity of the panel of the trial jury. The regular panel of petit jurors became exhausted before the trial jury was completed, whereupon the court ordered the sheriff and court clerk to draw from the jury box the names of twelve men to complete the panel. This was done, and the court took a recess to await the arrival of additional jurors drawn and summoned under such order. The record discloses

that the trial court tested the qualifications of these jurors so drawn as aforesaid as they arrived in court without waiting for the others to arrive. Counsel for the defendant contends that this proceeding was irregular, and he attacks the integrity of the trial jury therefor.

At page 47 of the case-made is the following:

"The Court: Let the record show that there are now twelve good and lawful men in the jury box called as jurors in this case, and the defendant is now informed by the court of his right to challenge the jurors, and that he must do so before the jury is sworn, if he desires to do so.

"Mr. Hickman: The record shows we have exercised our peremptory challenges.

"The Court: I am not talking about something outside. I am talking about challenging this jury that exists in the box. That is what I understand this statute means.

"Mr. Ward: Well, your Honor, we must accept the jury.

"Mr. Hickman: We do accept the jury."

The court having given the defendant the opportunity to challenge the panel before the jury was sworn, and the defendant having accepted the jury, he thereby waived any irregularities in the drawing and impaneling of the same.

The alleged errors relied on by the defendant are not sufficient to justify a reversal of this judgment. The evidence being sufficient to support the verdict of the jury, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.