# HOWARD KELL v. STATE.

No. A-8137. Nov. 28, 1931.
Rehearing Denied Jan. 15, 1932.

(6 Pac. [2d] 836.)

46

Melton & Melton, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of McClain county of the crime of manslaughter in the first degree in the killing of Wilbur Hopkins, and his punishment fixed by the jury at imprisonment in the state penitentiary for seven years.

The alleged crime was committed on the 7th day of August, 1930. Judgment was pronounced on the 5th day of November, 1930, and the appeal filed in this court on the 24th day of April, 1931.

The evidence of the state was that the deceased was sitting in his home, in the evening, with his back to a window, reading a paper; that defendant walked up to the window with a shotgun in his hand, saw the deceased sitting in the room, observed to see that no one was in line of the gun fire, and stooping down he fired a shot into the back of deceased's head, which produced instant death.

The defense was insanity produced by knowledge recently acquired of immoral relations between deceased and defendant's wife.

It is first contended that the trial court erred in overruling the application of the defendant for a continuance

of the trial. This application is based on the evidence of one of defendant's witnesses named Dixie Harrell.

It is set out in the affidavit that the absent witness would testify that the deceased, at a picnic in Blanchard, in 1928, offered to pay her money to have illicit intercourse with him; and further that she would testify that she was acquainted with the reputation of deceased and that such reputation was bad.

This offered testimony was absolutely incompetent. The fact—if it be a fact—that deceased had offered this witness money for an immoral purpose, and that his reputation for morality was bad, would constitute no defense to this defendant under the laws of this state.

Defendant in his brief cites State v. Murray, 83 Kan. 148, 110 Pac. 103. In that case the court says, in paragraph 2 of the syllabus:

"Held, the details of the person's licentious conduct with other women, as related by himself and others to the defendant, were not material. Held further, than an offer of the defendant to show by a woman, who was a witness, that the person assaulted had tried to seduce her was properly denied."

The other authorities cited by defendant are based upon the statute in the state where the case arose, or else they do not support defendant's contention.

In January v. State, 16 Okla. Cr. 166, 181 Pac. 514, 515, this court said:

"The so-called unwritten law, 'the right to avenge wrongs done a female member of a defendant's family by killing the wrongdoer,' does not exist in this state."

The killing of deceased by defendant because of the wrong done the defendant's wife constituted no defense

to the killing, and evidence that the deceased was a man of immoral character, or had sought to have immoral relations with other women, was incompetent.

The trial court did not err in overruling this application for continuance.

It is next contended that the trial court erred in sustaining the objection of the state to the questions propounded to some of the jurors upon their voir dire examination.

This contention is not supported by the record. In addition to this, the record shows that a jury of twelve good and lawful men was impaneled, chosen, and sworn to try the case. The record nowhere discloses that any objectionable juror was forced upon the defendant, or that any of the jurors whose partial examination is contained in the record sat upon the trial of the case. The record does not disclose that the defendant had exercised all of his peremptory challenges. If defendant procured a fair and impartial trial, that was all he was entitled to.

It is next contended that the court erred in excluding the evidence of Eva Kell, the wife of defendant.

This assignment of error relates to the refusal of the trial court (out of the hearing of the jury) to first permit the wife of defendant to detail to the jury the numerous instances when she had had sexual intercourse with the deceased, and then to further testify that she had told her husband about these matters on the night before the killing. The fact that deceased had had sexual intercourse with the wife of defendant was immaterial, and would form no defense to the killing of deceased, and the fact that defendant was told these matters was only competent to the issue of insanity. January v. State, supra.

The wife was an incompetent witness to a communication with her husband, not in the presence of others. Section 2699, C. O. S. 1921; Tingley v. State, 16 Okla. Cr. 639, 184 Pac. 599; Steeley v. State, 17 Okla. Cr. 252, 187 Pac. 821.

It appears from the record that Mrs. Kell was permitted to and did testify to the fact that she repeated what she had told her husband the night before the killing, the next morning to her brother-in-law and sister, Mr. and Mrs. John Bayliss, and defendant was present at that time. In that conversation Mrs. Kell admitted intimacy and illicit sexual intercourse with the deceased, and therefore everything that Mrs. Kell told her husband in private afterwards got to the jury, so that defendant could not have been prejudiced in the least by the ruling excluding the details of a communication between husband and wife, not in the presence of third persons.

"The exclusion of evidence to prove particular facts is not prejudicial, if the facts sought to be proved are otherwise proved by competent evidence, and it is apparent that the evidence excluded would not have changed the result." Addington v. State, 8 Okla. Cr. 704, 130 Pac. 311; Rogers v. State, 9 Okla. Cr. 277, 131 Pac. 941; Hawkins v. State, 24 Okla. Cr. 82, 216 Pac. 166.

It is next contended that the court erred in giving instruction No. 9. It is contended that this instruction is erroneous in that it, in effect, places an undue burden upon the defendant to offer proof of his insanity sufficient to raise a reasonable doubt of his sanity in the commission of the homicide. It is contended that this is not a proper statement of the law, in that it overlooks the fact that if the evidence on the part of the state is sufficient to raise a reasonable doubt of his sanity, no burden then rests upon the defendant to raise such reasonable doubt.

Technically, the instruction is probably defective in this respect. But when the instruction is considered in the light of the evidence, it cannot be held to be prejudicial to the substantial rights of the defendant. There is nothing in the testimony on the part of the state that would tend in any manner to present even a suspicion of the defendant's insanity.

In Morris v. State, 4 Okla. Cr. 233, 111 Pac. 1096, this court said:

"Although an instruction may not be technically correct, yet, if the evidence is of such a character that the defendant could not have been injured thereby, the error will not authorize a reversal of the judge."

Section 2822, C. O. S. 1921, forbids a reversal in such a case.

From a consideration of the evidence, this court can see that the jury could not have been misled as to its duty by the giving of instruction No. 9, when considered in connection with the other instructions on the question of insanity, and the instruction that it was necessary, before a conviction could result, that the burden rested on the state to prove the defendant guilty beyond a reasonable doubt.

It is next contended that the court erred in permitting the state to place the wife of the deceased on the witness stand to prove by her the number of children she had.

In rebuttal the state introduced Mrs. Hopkins, the wife of the deceased, as a lay witness on the question of the defendant's sanity, and after the witness had testified on this subject, counsel for the state asked the witness how many children she had, and she was permitted, over the objection and exception of defendant, to answer that she had three. This was as far as the inquiry was

allowed. Defendant was permitted to prove the number of his children and their sex and ages.

Strictly speaking, this evidence probably had no bearing upon the issue in the case and was incompetent, but this court has repeatedly held that the admission of incompetent evidence is not ground for reversal, unless it affirmatively appears from the record that the plaintiff in error was injured thereby. Manning v. State, 7 Okla. Cr. 368, 123 Pac. 1029; Foreman v. State, 38 Okla. Cr. 50, 259 Pac. 176.

It is next contended that the court erred in refusing defendant's requested instructions numbered 1 to 7.

This court has repeatedly held that it is not error to refuse to give requested instructions, even though they may correctly state abstract propositions of law, if the propositions of law requested to be instructed upon are sufficiently covered by the instructions given.

An examination of the record discloses that the court covered the principles of law contained in the requested instructions in the general instructions given. It was not error, therefore, to refuse to give those requested.

Finally, it is contended that the court erred in compelling the defendant to picture to the jury the manner in which the deceased was killed, the particular contention being that the killing being admitted, the requiring of the defendant to demonstrate before the jury how he did the killing was compelling him to give evidence against himself.

This court has held that when the defendant takes the witness stand in his own behalf, he subjects himself to the rules of evidence governing other witnesses, and

waives all the privileges which he is entitled to by remaining silent, and subjects himself to the same rules of cross-examination and impeachment as any other witness. Davis v. State, 35 Okla. Cr. 156, 249 Pac. 164; Radney v. State, 36 Okla. Cr. 240, 253 Pac. 913, 914.

In considering this assignment, this court is dealing with the defendant as a witness, and the fact that he takes the witness stand in his own behalf amounts to a waiver of the right to incriminate him, if a proper cross-examination has that effect, concerning a matter about which he has testified in chief.

The defense interposed in this case is that of insanity, and the question of the condition of defendant's mind and of his ability to know and understand just what he was doing at the time of the commission of the crime was relative on that particular issue. It was competent, therefore, for the state to request the defendant, on cross-examination, to demonstrate to the jury, if he could, just how he committed this alleged crime. If the defendant had mental faculty to remember just how he did it and to show the jury that fact, they certainly had a right to know it. Such would be a circumstance having some bearing on the question of the defendant's sanity at the time of the commission of the crime, as to whether he knew right from wrong as applied to that particular act, and as to whether he realized exactly what he was doing. The weight of such evidence was for the jury. The mere fact that the evidence given by the defendant might have a tendency to incriminate him was not compelling him to give evidence against himself, in violation of article 2 of section 21 of the Constitution, after he had voluntarily taken the witness stand in his own behalf, and testified on direct examination to the matters here in controversy.

An examination of the whole record convinces this court that the defendant should have been convicted of murder instead of manslaughter, and the fact that he was only convicted of manslaughter with a seven-year penalty is probably due to the illicit relations which existed between deceased and defendant's wife, which the jury considered as mitigation of the offense.

No fundamental errors appearing upon the record, and the evidence supporting the verdict of the jury, the cause is affirmed.

EDWARDS, J., concurs. DAVENPORT, P. J., not participating.