## A. M. HARRIS v. STATE.

No. A-8248. Jan. 2, 1932.
Withdrawn, Corrected, Refiled, and Rehearing Denied Feb. 5, 1932.
(7 Pac. [2d] 914.)

Sid White, for plaintiff in error.

J. Berry King, Atty. Gen. (Lewis R. Morris, Co. Atty., and Draper Grigsby, Asst. Co. Atty., on the brief), for the State.

CHAPPELL, J.  Plaintiff in error, hereinafter called defendant, was convicted in the district court of Oklahoma county of the crime of murder, and his punishment fixed by the jury at death.

The evidence of the state was that defendant left his family on numerous occasions and stayed away from a few days to two years; that he was the father of five children, and made practically no provision for their support; that during his absence his wife, with their help, supported herself and the children; that, after an absence of about two years, defendant returned; that his wife applied for a divorce; that, while the case was pending, she was brought to Oklahoma City and taken to the University Hospital for an operation; that she had become acquainted with deceased some time before the homicide; that, after she was taken to the hospital, deceased visited her there; that defendant followed her to Oklahoma City and sought to see her, but she refused to have anything to do with him; that on Friday morning before the homicide defendant bought a .38 Smith & Wesson revolver in the negro section of Oklahoma City; that on Friday evening defendant went out to the hospital and met deceased, and, after some conversation, ordered him not to see his wife any more; that defendant, armed with his pistol, came back to the hospital grounds Friday evening and sat where he could watch his wife through an upper window

of the hospital; that deceased was at the hospital that evening and called on defendant's wife, and that defendant waited outside for him, but deceased left the hospital by another entrance, and defendant failed to see him; that defendant was watching the hospital and for deceased on Saturday evening; that on Sunday evening defendant returned and stationed himself on the parking, where he could see his wife or any one near her after the lights were turned on; that at about 8 o'clock in the evening defendant saw deceased sitting beside his wife's bed; that he rushed upstairs, past the nurses, and into the hospital where his wife and some 33 sick and helpless women were.

A woman lying on a cot adjoining that of defendant's wife testified that defendant came into the door of the ward, hurried over to where deceased was sitting with his back turned toward him, and, without any notice to deceased, fired one shot into his back; that deceased threw up his hand after the shot, and turned toward defendant, and defendant fired four other shots into his body; that deceased grappled with defendant and threw him to the floor and took the pistol away from him before the guard and the nurses reached him; other witnesses testified that all of the shots were fired into the front of deceased's body. All the eyewitnesses for the state were unanimous in their testimony that deceased made no move and did nothing to cause the defendant to begin shooting.

Defendant testifying for himself, claimed that he saw a handkerchief in deceased's pocket and thought it covered a weapon, and, when deceased threw up his arm, he fired in self-defense. No weapon was found on deceased and no evidence offered, except that of defendant, himself, that deceased had a weapon. Defendant also offered evi-

dence in an attempt to show that he was insane at the time the offense was committed.

Defendant contends, first, that the trial court abused its discretion in overruling his motion for a new trial on the ground of newly discovered evidence.

What is claimed to be newly discovered evidence is included in the affidavits of his former wife, Ola Harris, his son, Haskell H. Harris, and Anna Richardson, wherein they made oath to threats made by deceased toward defendant, and that deceased went armed, but make no claim that these threats were ever communicated to defendant nor that defendant had any reason to believe that deceased went armed.

Defendant, testifying for himself, said that deceased had never made any threats toward him.

The evidence of the state is that deceased was unarmed; that defendant rushed into the hospital room, and, while deceased was seated in a chair, made an unprovoked attack upon him, firing five shots into his body, from the effects of which he later died.

Uncommunicated threats and the fact that deceased went armed would only be admissible for the purpose of establishing who probably was the aggressor. Since there is no question as to who was the aggressor, there is no reasonable probability that this evidence, even if admissible, would have changed the result of the trial.

A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court. The presumption is that the discretion was properly exercised, and the ruling of the trial court will not be disturbed, except for an abuse of this discre-

tion. Carter v. State, 35 Okla. Cr. 421, 250 Pac. 807; Peters v. State, 35 Okla. Cr. 367, 250 Pac. 1032; McColloch v. State, 45 Okla. Cr. 442, 283 Pac. 1026.

No diligence having been shown and no abuse of discretion appearing, the trial court properly overruled the motion for a new trial.

It is next contended that the record is convincing that the plaintiff in error was not mentally responsible at the time of the fatal difficulty.

We have carefully read all of the evidence, and find nothing to support this contention. It appears from the record that the defendant had mental capacity to know right from wrong, and to know the consequences of his act. This is all that is required. Smith v. State, 12 Okla. Cr. 307, 155 Pac. 699; Owen v. State, 13 Okla. Cr. 195, 163 Pac. 548; Turner v. State, 43 Okla. Cr. 380, 279 Pac. 525.

Insanity as a defense to a crime is a fact for the jury to determine under proper instructions. Baker v. State, 9 Okla. Cr. 47, 130 Pac. 524; Reed v. State, 23 Okla. Cr. 56, 212 Pac. 441. The question of defendant's sanity having been submitted to the jury upon proper instructions, the finding of the jury is conclusive thereon where there is competent evidence to support it.

Counsel next contends that the punishment is excessive, and says: "This was not an unnatural or revolting killing. This was the act of an honorable man driven beyond the limit of human endurance by a studied outrage of his affections and insult to his pride."

Defendant's conduct toward his wife and his failure to make any provision for her support is a complete answer to this contention. Here we have a case where the

husband is callous and indifferent toward his wife and children, leaving them for long periods entirely unprovided for. When the time came when he wanted a reconciliation, he was outraged because his long-neglected wife and family refused to be reconciled. He bought this pistol on Friday morning, no doubt with the deliberate intention to use it to kill either the deceased or his wife. His conduct in watching the hospital, waiting for deceased, and his final unprovoked attack and cold-blooded killing of the deceased, completely refutes the argument of counsel.

In the recent case of Kell v. State, 53 Okla. Cr. 45, 6 Pac. (2d) 836, this court said:

"The so-called unwritten law, 'the right to avenge wrongs done a female member of a defendant's family by killing the wrongdoer,' does not exist in this state."

The errors of law complained of being without substantial merit, the evidence supporting the verdict of the jury, and no mitigating circumstances appearing in the record, the cause is affirmed.

The original time for the execution having passed, owing to the pendency of this appeal, it is considered, ordered, and adjudged by this court that the judgment and sentence of the district court of Oklahoma county be carried out by the electrocution of the defendant on the 11th day of March, 1932.

DAVENPORT, P. J., and EDWARDS, J., concur.