CHARLES A. ELKINS v. STATE.

No. A-4812. Opinion Filed Feb. 14, 1925.
(233 Pac. 491.)

(Syllabus.)

1. Indictment and Information—Allowing Prosecution After Impaneling of Jury to Amend Mistake of Date Held Proper as Correction of Matter of Form. An information for murder which charges the homicide to have occurred on the 30th day of December. 1923, and from the effects of which deceased died on the 30th day of December, 1922, is not fatally defective. The mistake of date is merely clerical, and its correction by amendment is a matter of form, which may be made even after the jury is impaneled.

2. Jury—Juror not Disqualified by Mere Partial Opinion or Impression. A partial opinion or impression derived from newspaper accounts and from neighborhood rumor does not disqualify a juror, provided the court is satisfied by the declaration of the juror, under oath, that he can and will act fairly and impartially on the matter to be submitted to him.

3. Jury—All Doubts as to Competency of Juror to be Resolved in Favor of Accused. Upon the examination of a juror on his voir dire, the court should resolve all doubts as to the competency of a juror in favor of the defendant.

4. Trial—Entrance to Jury of Outside Influence to be Prevented it is the duty of the court to see that no outside influence, by newspaper or otherwise, shall come to the jury such as would be likely to influence it in its deliberations.

5. Trial—Division of Jury in Sleeping Quarters, Each Division in Charge of Officer, not Separation Vitiating Verdict. In a capital

case, where the necessity of accommodating the jury requires that there be a division of the jury in its sleeping quarters, where each such division is in charge of an officer, this is not such a separation as will vitiate the verdict.

Appeal from District Court, Oklahoma County; William H. Zwick, Judge.

Charles A. Elkins was convicted of murder, and he appeals. Affirmed.

C. R. Reeves and E. C. Patton, for plaintiff in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

EDWARDS, J.  On the night of December 29, 1922, the plaintiff in error shot and killed J. H. Ferguson on West California street, Oklahoma City.  The killing took place at a rooming house kept by Mrs. Rosa Walker.  It appears that plaintiff in error and the deceased Ferguson had formerly been associated together as private detectives, and had had a misunderstanding or difficulty, and had not met for some little time before the night of the homicide.  On that night the deceased Ferguson, Judge Wright, and Mrs. Reeves went to the rooming house, and later the plaintiff in error came there.  There is a wide conflict about what happened after that, but the evidence of the state is that the plaintiff in error was drunk and threatening.  He had a gun which was gotten away from him and hidden in a window, and Ferguson was taken to another room and had taken off his clothing except a union suit.  Disorderly conduct on the part of plaintiff in error continued, and he finally agreed to leave the house, and his gun was given him.  He then engaged in an altercation with Mrs. Walker in the hall, in which he was noisy and profane.  The deceased came to the door of the room to which he had been transferred and attempted to quiet him, when he was shot and killed

by plaintiff in error, who contends that the shooting was done in self-defense.

Error of the trial court is assigned as follows: First. In permitting the state to amend the information after the trial had begun. Second. In overruling plaintiff in error's objection to Juror Schunaman. Third. In not instructing the jury on the law of dying declaration. Fourth. Misconduct of the jury and the bailiffs in charge of the jury in permitting the jury to learn of the arrest of one of the witnesses in the case on a charge of perjury, and in permitting the separation of the jury during the course of the trial. Error is also assigned upon the giving of various instructions of the court's charge.

The information as originally filed contained an error in the date in one place. In the printed and formal part of the information it was stated that the offense was committed on the 30th day of December, 1923, while in the charging part it was alleged that the deceased died on the 30th day of December, 1922. This, apparently, was not discovered by the state until the jurors were being examined at the trial of January 8, 1923; thereupon the county attorney asked leave to correct the error. The attorneys for plaintiff in error objected, which was overruled by the court and exceptions taken. It is argued at some length that this is an amendment in substance, the date given an impossible date, and the information fatally defective. Numerous authorities are cited by plaintiff in error in support of this contention. Section 2559, C. S. 1921, provides:

"The precise time at which the offense was committed need not be stated in the indictment or information; but it may be alleged to have been committed at any time before the finding thereof, except where the time is a material ingredient in the offense."

Section 2564 provides:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

This court has frequently held that an amendment as to matter of form may be made at any time, even after the jury is impaneled, when it can be done without prejudice to the substantial rights of the defendant. Rollen v. State, 7 Okla. Cr. 673, 125 P. 1087; Hogue v. State, 9 Okla. Cr. 521, 132 P. 511.

Some of the earlier authorities, when pleading and procedure were more technical than at present, held that an indictment stating a future date was fatally defective, but the more modern and better reasoned authorities incline to the view that it is a mere error which may be corrected without prejudice. The only way in which the defect here could have affected the plaintiff in error would have been because he came to trial prepared to meet evidence that he had committed a crime on a day which had not yet transpired. And, if the change in the date by amendment left him unprepared, he should have requested a continuance. Obviously, the wrong date was a mere clerical error, not of substance, and in no sense prejudicial. Rollen v. State, supra; Conrand v. State, 65 Ark. 559, 47 S. W. 628; Stevenson v. State, 5 Baxt. (Tenn.) 681; State v. Brooks, 85 Iowa, 366, 52 N. W. 240; State v. Anderson, 125 La. 779, 51 So. 846; Newsome v. State, 2 Ga. App. 392, 58 S. E. 672; State v. Cooper, 31 Kan. 505, 3 P. 429.

In the examination of the Juror Schunaman, the juror stated that on the next day after the homicide he had heard the case talked about, and had a partial opinion. This he qualified by saying that it was an impression, but stated that he would be controlled by the evidence. That

he could and would disregard what he had heard and render a fair, conscientious verdict and would require the state to convince him beyond a reasonable doubt before he would return a verdict of guilty. On cross-examination he testified that he probably had some of his opinion or impression, but his evidence indicates that his testimony meant merely to the fact of a transaction at the time of the homicide as follows:

"Q. They claim to know what happened there that night? A. That there was a transaction; they did." ·

And further:

"Q. There is nothing now in your mind that would keep you from giving this man a fair and impartial trial such as you would want yourself if you were on trial? A. No; there would not be.

"Q. You can give this man a fair and impartial trial, can't you? A. I can.

"Q. In spite of what you say and what you heard talked? A. Well, that is no consideration."

Section 2678, C. S. 1921, reads:

"* * * But no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him."

This question has been often before this court, and we want to emphasize that the trial court should resolve all doubts arising under the evidence as to the competency of a juror in favor of the person on trial, and, where it appears that the juror would not be impartial, a challenge for cause should be sustained. Where a juror has formed an opinion as to the guilt of the accused that

will require evidence to remove, he is not a qualified juror. The plaintiff in error excused by peremptory challenge the Juror Schunaman. The record does not affirmatively show that the plaintiff in error exhausted the peremptory challenges allowed him by law, and, even if the overruling of the challenge for cause were prejudicial error, it is not available. Turner v. State, 4 Okla. Cr. 164; 111 P. 988; Johnson v. State, 1 Okla. Cr. 321, 97 P. 1059, 18 Ann. Cas. 300.

A mere partial opinion or impression does not disqualify, if it be apparent that such partial opinion or impression will not influence the juror in finding a verdict. Inasmuch as the trial court has a wide discretion in passing on the competency of jurors, we think there was no abuse of discretion in overruling the challenge for cause to the Juror Schunaman.

At the conclusion of the evidence, Mr. Briggs, one of the attorneys for plaintiff in error, said:

"The defendant at this time requests the court to intruct the juror upon the law governing a dying declaration, as offered in this case by the prosecution."

No written request for any special instruction on this subject was made, and the court was not further enlightened as to what was desired by the statement just quoted. Counsel in their brief in this court have been no more definite, but content themselves with saying that the defendant requested an instruction which was not given, and was entitled to have the jury instructed on the rule of law as to the sufficiency of a dying declaration. No authorities are cited; just what phase of the law on which it was desired that the court should instruct the jury we do not know. The matter of dying declaration has been often considered by the courts, and the different aspects of the law determined. Its competency

was a matter for the court, and was determined by the court, we think, properly when it was admitted in evidence. Its weight was for the jury, and, in general, is determined in the same manner and by the same rules as is applied in weighing other evidence. Hall v. State, 124 Ga. 649, 52 S. E. 891; Pearson v. State, 143 Tenn. 385, 226 S. W. 538.

Error is further assigned in the misconduct of the jury and misconduct of the bailiff in charge of the jury. It is shown that during the course of the trial, and before it had been concluded, one of the witnesses for the defendant was arrested on a charge of perjury. News of such fact was printed in the newspapers, and newsboys in attempting to sell papers made known such fact in the hearing of the jurors. There is no complaint that the jurors read the papers, or that any person talked to any juror, or that any one in the hearing of the jury said anything about it other than the mere outcry of some newspaper vender. Plaintiff in error contends this was improper influence and the receipt of evidence out of court. None of the jurors were called in support of this assignment in support of the motion for a new trial.

It has often been held error for jurors in the trial of a homicide case to read editorials or accounts of the trial which would tend directly or indirectly to influence their minds either for or against the accused. Styles v. State, 129 Ga. 425, 59 S. E. 249, 12 Ann. Cas. 176; People v. Wong Loung, 159 Cal. 520, 114 P. 829; State v. Tilden, 27 Idaho, 262, 147 P. 1056; People v. Fleming, 166 Cal. 357, 136 P. 291, Ann. Cas. 1915B, 881.

There is nothing to show that the jury ever learned anything about the arrest of the witness on a charge of perjury, except the bare fact and in the manner stated. We can readily perceive that, if the judge in the presence of the jury should order the arrest of a witness for per-

jury, the jury might take it as an expression of the opinion of the judge on the lack of truthfulness of the testimony of the witness. But, if the arrest was ordered by the court in this case, it was out of the presence of the jury, or, if instituted by the county attorney on complaint or by the indictment of the grand jury, it would not carry with it any such significance. It is, of course, the duty of the courts to see that no outside influence shall come to the jury which might influence their determination in a case on trial. We do not believe, however, there is any substantial error in the mere fact of the arrest of the witness brought to the knowledge of the jury in the manner as disclosed by the record in this case.

Misconduct in allowing the jury to separate after the final submission is argued. There were two bailiffs with the jury, and it was found that all could not sleep in one room, so one of the bailiffs occupied one room with a part of the jury and another with another part. This court has held that in capital cases the jurors, after the case is finally submitted, should not be permitted to separate.

Section 2716, C. S. 1921, reads:

"The jurors sworn to try an indictment or information, may, at any time before the submission of the cause to the jury, in the discretion of the court, be permitted to separate, or to be kept in charge of proper officers."

Section 2723, in part, is as follows:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

In the early case of Bilton v. Territory, 1 Okla. Cr. 566, 99 P. 163, it was held that under this provision of law it was error, vitiating the verdict, for the jury to separate in a capital case after final submission, but in that case the court said:

"Most of the cases cited by the territory in this case on this subject hold that the separation of a jury for a short time will not vitiate a verdict, where the juror so separated from the others is attended by a sworn officer, and where the facts show affirmatively that no improper influence upon the minds of the jurors has taken place; but the great weight of authorities in capital cases favor the doctrine that, if the jury separates without being attended by a sworn officer, such separation vitiates the verdict, notwithstanding no affirmative evidence of improper influence has been adduced."

An examination shows that in that case two of the jurors separated from the others, and without any accompanying officer, went into a saloon and bought whisky, and that another one without an officer separated himself from the other jurors.

It must be evident, however, that where the necessity of accommodating the jurors requires a division, such as the use of toilet accommodations, sleeping quarters, and such, it is not the separation contemplated by the statute, particularly as in this case where each part of the jury was accompanied by a bailiff.

Complaint is also made that the jurors on one occasion attended a picture show. It is conceivable that a picture show might be of such a character as to have a bearing on the case on trial, but nothing of the kind is suggested here, so no error results.

There is some contention that the record does not show that the bailiffs were sworn on some occasions, nor the jury admonished. In the absence of an affirmative

showing to the contrary, it will be presumed that these things were done.

Finally, the giving of certain instructions is complained of. The parts of the instructions complained of are not set out as required by the rules of this court, and no authorities cited in support of the contention, but we have examined carefully the instructions complained of, and find them free from fundamental error.

It appears that the defendant had a fair trial, that the law was fairly submitted to the jury, the evidence ample, and no legal reason is apparent for disturbing the verdict.

The verdict is affirmed.

BESSEY, P. J., and DOYLE, J., concur.