## JOHN LEMKE v. STATE.

No. A—8664.   April 16, 1934.
Rehearing Denied May 11, 1934.
(32 Pac. [2nd] 331.)

2

Meacham, Meacham & Meacham, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Custer county of murder and his punishment was fixed at death.

Defendant was charged with the murder of one Nellie Jelinek. He was a widower about 65 years of age and deceased was a widow about 48 years of age. He resided some five or six miles from the residence of deceased, had been paying her attention for some time, and had been urging her to marry him, which she refused to do. On the night of the homicide, he walked from his place of residence to that of deceased, found all the members of her family absent except two sons of deceased, aged 9 and 11, and two small boys, grandchildren of deceased, aged 4 and

6 years. When he came to the residence, the barking of a dog caused the deceased to go out of the house and she discovered defendant; they engaged in a conversation and deceased then re-entered the house; over her objection he also came in. He fired a shot at one of the sons, then shot deceased and used a vile epithet. The wound inflicted was immediately fatal. After firing the fatal shot, defendant outraged the body. There is no dispute as to the facts of this extremely revolting crime. The defense of insanity was made. Defendant did not take the witness stand and called only three witnesses, a daughter and two sons.

Several assignments of error are discussed in the briefs. Those we deem necessary to discuss may be grouped as follows:

(1) Error in denying a continuance.

(2) Error in the selection of the jury.

(3) Error in excluding testimony offered by defendant and in admitting incompetent evidence offered by the state.

(4) Misconduct by spectators which prevented a fair trial.

(5) Error in the instructions.

(6) Error in the separation of the jury.

Under the first assignment, complaint is made that defendant was forced into trial without his counsel having sufficient time to prepare his defense.

The homicide occurred the night of May 28th. Defendant was arrested on the same night. The preliminary hearing was June 6th. Defendant was arraigned in district court June 10th; application for continuance was

4

filed June 22d. It was denied and both the state and the defendant announced ready for trial and the trial began on that day. In many decisions of this court it is held that an application for continuance is addressed to the sound discretion of the trial court and unless an abuse of discretion is shown, a judgment will not be reversed on appeal. The application for continuance is general in its terms; by a countershowing it appears that prior to June 6th, defendant began consultations with his attorneys, which continued to the trial; that a list of names of witnesses for the state was served June 12th. This, in connection with the fact that after the application was denied defendant announced ready for trial, shows clearly there was no abuse of discretion.

Under the second assignment, i. e., error in selection of the jury, it is argued the juror Lee was not fair and impartial. This juror on voir dire stated that from rumor and hearsay he had a "temporary opinion," but upon examination by the court he stated this opinion was not fixed and he could and would disregard it if selected by the jury. It is clear he had a mere impression not amounting to an opinion. Under section 3000, Okla. Stat. 1931, he was not disqualified.

Complaint is also made that the juror Creswell was not impartial for the reason he had been interested in the prosecution of a murder case some time previously wherein his son had been killed and the slayer had been acquitted. This fact, however, was well known to counsel both for defendant and the state, and no questons were asked on voir dire in reference to that case. Defendant's counsel, in the instant case, had assisted in the prosecution and the county attorney, at that time engaged in private practice, had defended in that case. It appears that counsel for

both sides were satisfied the juror was impartial and neither desired to challenge him nor to call the attention of the trial judge to the facts of the juror's interest in the former case. We perceive nothing that affected the qualification of the juror.

Complaint is also made that Thompson, a juror, who sat in the case, was not impartial for the reason that a short time prior to the homicide he had ridden in an automobile in which defendant was also riding and after the homicide he was informed the person riding with him was the defendant and some disparaging remarks were made. This was not shown on voir dire but was shown on the motion for new trial. The remarks were not a comment on the facts of the case. There is no material error in this assignment.

Under the third assignment, error in excluding offered testimony, it was shown that Mrs. Schafer, a daughter of defendant, was called in support of the plea of insanity. She testified as to her observation of defendant and that for three years there had been something wrong with him. After examination and cross-examination, the witness was asked on redirect:

"Q. Mrs. Schafer, from your observation of his actions and from the things he has said to you, do you know whether or not he is sane? County Attorney: Object to that— A. I think he is insane. County Attorney: Wait a minute,—we object to that as incompetent, irrelevant and immaterial and for the further reason that the witness has not shown herself qualified to answer. By the Court: Sustained. Counsel for Defendant: Exceptions."

No motion to strike this answer was made and it went to the jury. It will be noticed the form of the question does not touch the matter of sanity at and prior to the homicide, but is in the present tense; it was appar-

ently for this reason the court ruled as it did, for immediately following two sons testified substantially as did the daughter and were permitted to testify that in their opinion defendant was insane at and prior to the time of the homicide.

Under this assignment, complaint is also made that the court erred in permitting the witness Steinberg, qualified as a nonexpert, to testify in his opinion defendant was sane. This testimony was limited to the time at and just prior to the homicide; the ruling on the admission of his testimony was the same as that applied to defendant's witnesses. When the defense of insanity is made, a nonexpert witness, properly qualified, may give his opinion as to the sanity of the accused. The trial court should not be too technical in his ruling on testimony on this point. In the instant case, since the question was not in due form and the witness did answer, no material prejudice could have resulted.

Next it is argued there was error in permitting the witness Simpson, sheriff, to testify he arrested defendant on the night of the homicide after a coroner's jury had investigated the death and to state it was in part because of the verdict he made the arrest. The verdict was not offered in evidence, nor produced. The coroner's verdict is based on an ex parte proceeding and is not admissible, but the bare statement made here, while not competent, had no particular significance as going to the guilt or innocence of defendant and could have had no influence on the jury. It made no difference what reason prompted the sheriff in making the arrest.

Under the fourth assignment, i. e., misconduct of the spectators during the course of the trial, counsel state that the courtroom was crowded; that spectators were per-

mitted to gather about the doors and windows near the jury; that they were bitter in their feelings and laughed and booed at the testimony of defendant's witnesses. No objection on this point was made during the course of the trial. This motion is supported by testimony of one of defendant's counsel and was rebutted by the testimony of the court bailiff. At the conclusion the court made a finding, in part as follows:

"On various occasions the court admonished persons to stay away from the open windows because they had to be kept open. It was with considerable difficulty that we got along in that respect. I tried to keep the bailiffs busy keeping the people in proper condition and in proper position to hear the case. It was a public trial. I think a few times in the course of the trial persons in the court-room laughed at some question or some answer that was made. Whenever there was any laughing either the court or some bailiff restored order, that is, told them to quit laughing, that we couldn't tolerate that. Each time that the jury was allowed a recess or was sent out they were placed in charge of a sworn bailiff and the jury and the bailiff were both admonished that it was necessary to keep the jury together. * * *

"It is some place stated in the motion that some person had made the statement that if this defendant were acquitted that they would hang him or kill him or something of the kind. In that connection nothing like that ever came to the ears of the court. The court didn't consider from the attitude of the people who came here to hear this case that they were in that frame of mind. I don't think there was anybody inflamed. I don't think anybody wanted to kill him or anything of the kind. Nothing of that kind reached the ears of the court. Nobody acted like that in the presence of the court. Nobody made any statement of that kind at that time that came to the attention of the court if there was anything of the kind. There were three bailiffs in the court and three persons connected with

the sheriff's office serving the court. There was no spirit manifested in the courtroom or out of the courtroom that I know of that caused anybody to fear that violence might be attempted. * * *"

This finding of the court is conclusive that there was no prejudicial misconduct on the part of the spectators.

Under the fifth assignment, that is, error in the instructions, complaint is made of instruction 14, which is:

"You are instructed that the law presumes every person to be sane, sanity being the usual and normal condition of mankind, and in the prosecution of a criminal case the prosecution may rely upon such presumption until the defendant produces sufficient evidence to raise a reasonable doubt of his sanity, when the law requires that, the state then has the burden of establishing the sanity of the defendant in the manner and to the extent that any other material matter must be established to warrant a conviction; and if, upon consideration of all the evidence in the case the jury have a reasonable doubt that the defendant at the time of the commission of the homicide was mentally competent to distinguish between right and wrong, or to understand the nature of the act he was committing, then it will be the duty of the jury to acquit him."

The argument is made that this requires the reasonable doubt of sanity to be raised by defendant and thereby places the burden on him. This court, in several cases, has held an instruction substantially in the language quoted is not erroneous. Adair v. State, 6 Okla. Cr. 284, 118 Pac. 416, 44 L. R. A. (N. S.) 119; Smith v. State, 12 Okla. Cr. 307, 155 Pac. 699; Alberty v. State, 10 Okla. Cr. 616, 140 Pac. 1025, 52 L. R. A. (N. S.) 248; Ussaery v. State, 22 Okla. Cr. 397, 212 Pac. 137; Claycomb v. State, 22 Okla. Cr. 315, 211 Pac. 429. This language was criticized in Kell v. State, 53 Okla. Cr. 45, 6 Pac. (2d) 836. Literally construed and considered alone the instruction is

subject to criticism. It is true the law presumes every person to be sane and that sanity is the usual and normal condition of mankind, and in the prosecution of a criminal case the state may rely on such presumption until evidence is introduced either by the state or by the defendant sufficient to raise a reasonable doubt of the sanity of the accused, then the burden is on the state to prove the sanity of the defendant in the manner and to the same extent as any other material matter. The instruction on this point would be better stated if the jury were told in substance the presumption of sanity prevailed "until sufficient evidence to raise a reasonable doubt had been introduced either by the state or by the defendant." An instruction is not to be construed separate and apart from the other instructions, but they are to be construed as a single charge. In instruction 12 the jury are told that defendant had introduced evidence of insanity at the time of the homicide and that the burden was on the state to prove beyond a reasonable doubt that defendant was sane at the time and that if the state had failed to prove to the satisfaction of the jury beyond a reasonable doubt that defendant was sane at the time, they should return a verdict of not guilty. These two instructions construed with the entire charge fairly state the law.

Lastly it is argued that after the case was submitted, the jury were permitted to separate and that error from the fact of separation is presumed. One Coleman, manager of the hotel in which the jury stayed, testified that on Friday night the wife of juror Nelson called him by phone; that he notified the juror, who then came downstairs with the bailiff, who stood by while the juror talked to his wife. The jury occupied one side of the hotel on the second floor; no other person was on that side of the building. Also on one occasion a bystander Fleming, in

the hotel lobby, asked juror Berry what had been done with the Lemke case and Berry answered that the jury was still out. Fleming said Berry was alone; he did not know at the time he was on the jury. The bailiff, however, testified he had the jury in charge, that one of them had left some garments at the hotel and he conducted them through the lobby where the bystander made the inquiry; that they were all together and there was no separation except that they were strung out slightly in passing through the lobby. No prejudice could have resulted. The division of a jury by placing them in different sleeping quarters is not a separation. A mere temporary separation for a purpose as the use of a toilet or the use of a telephone or kindred reasons is not within the meaning of the law forbidding a separation of the jury. Elkins v. State, 29 Okla. Cr. 175, 233 Pac. 491; Forester v. State, 36 Okla. Cr. 111, 252 Pac. 861. See, also, 16 C. J. 1077. It is also held that a temporary absence of an officer in charge is not ground for new trial.

Upon a consideration of the entire record we find no material error. The case is affirmed.

The original time for the execution having passed, owing to the pendency of this appeal, it is considered, ordered, and adjudged by this court that the judgment and sentence of the district court of Custer county be carried out by electrocution of the defendant on the 15th day of June, 1934.

DAVENPORT and CHAPPELL, JJ., concur.