## EDWARD DUTTON v. STATE.

No. A-10052.   Dec. 2, 1942.
(131 P. 2d 777.)

Marion R. Wells, of Wewoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. Edward Dutton was charged in the district court of Seminole county with the crime of murder, was tried, convicted of the crime of manslaughter in the first degree with the punishment left to the court. The court, after overruling the motion for a new trial, sentenced the defendant to serve a term of seven years in the State Penitentiary, from which an appeal was taken.

The defendant appealed by transcript and did not file in this court a case-made of the evidence taken at the trial.

It is first contended that the court erred in overruling the defendant's motion for a continuance.

Neither the motion for continuance nor the affidavit of defendant thereto attached complies with the settled law of this state, requiring diligence upon the part of defendant to obtain the attendance of the absent witness, and does not show any probability of securing the witness at the next term of court.

In Lane v. State, 65 Okla. Cr. R. 192, 84 P. 2d 807, 808, it is held:

"A motion for continuance on the grounds of the absence of witnesses should show reasonable diligence, the probability of securing the witness within a reasonable time, and the proper location of the witness. The overruling of a motion for continuance is in the sound discretion of the trial court, and where this discretion has not been abused it will not be set aside."

See, also, Bayouth v. State, 39 Okla. Cr. R. 8, 262 P. 702; Sledge v. State, 40 Okla. Cr. R. 421, 269 P. 385; Wininger v. State, 55 Okla. Cr. R. 78, 24 P. 2d 664.

In addition to the fact that the motion for continuance was insufficient on its face to require the court to grant a continuance as a matter of law, the record shows, in a note set forth by the reporter, that the testimony of the two witnesses referred to in the motion for continuance and given on a former trial was, by agreement of the parties, read to the jury as their evidence on behalf of the defendant.

Under all of these circumstances it appears that the court did not abuse his discretion in overruling the motion for a continuance.

It is next contended that the court erred in keeping the jury together after they had reported that they were deadlocked nine to three.

The record discloses that the case was finally submitted to the jury about 5 p.m., October 15th, and that the verdict of guilty was finally returned into court on October 16th at 4:30 p.m. The record further shows that the jury reported twice into open court during their deliberation. The first report was at 10:30 p.m., October 15th, at which time the foreman of the jury advised the court that the jury stood three to nine, at which time the court directed them to go to bed. The next morning at 10:30 a.m. the jury again reported into open court, at which time, in response to the query of the court as

to whether they had agreed upon a verdict, the foreman stated, "I don't think it is possible for us to get together;" to which the court stated, "Well, I want you to go back and deliberate."

In the early case of Kent v. State, 8 Okla. Cr. 188, 126 P. 1040, 1045, it is held:

"Section 6867 [Comp. Laws 1909, 22 O. S. 1941 § 896], Procedure Criminal, provides: 'Except as provided in the last section, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict, and rendered it in open court, unless by the consent of both parties entered upon the minutes, or unless at the expiration of such time as the court deems proper, it satisfactorily appear that there is no reasonable probability that the jury can agree.'

"Under the statute, the length of time the jury should be required to deliberate, and the probability of an agreement must be determined by the court from the facts and circumstances of the particular case and the court's discretion will be conclusive, unless it has abused its discretion in that regard."

Trial courts must necessarily be vested with a wide discretion in the determination as to the time which a jury should be kept together. This was a capital case even though the verdict returned by the jury was for the lesser offense of manslaughter. Since there is no record of the evidence introduced at the trial, we are not advised as to how long the trial proceedings had lasted, and certainly, under these circumstances, it would be an unwise rule of law to say that the court abused his discretion in keeping the jury together for a period of less than 24 hours after the case was finally submitted. Here the court made no comment which might be construed as tending to coerce the jury, and, so far as the record discloses, he was only doing his duty in requiring the jury to continue the deliberation.

Lastly, it is contended that the jury was guilty of misconduct after the case was finally submitted to them. This assignment is based upon two acts of the jury. The record discloses that the jury was placed in the charge of two sworn bailiffs. That when they retired for bed ten of the jurors and one bailiff slept on one floor of a hotel and two jurors and the other bailiff slept in a room together on another floor of the hotel. In Lemke v. State, 56 Okla. Cr. 1, 32 P. 2d 331, 334 it is stated:

"The division of a jury by placing them in different sleeping quarters is not a separation. A mere temporary separation for a purpose as the use of a toilet or the use of a telephone or kindred reasons is not within the meaning of the law forbidding a separation of the jury. Elkins v. State, 29 Okla. Cr. 175, 233 P. 491; Forester v. State, 36 Okla. Cr. 111, 252 P. 861."

The most serious contention of the defendant is based upon the action of the bailiffs in allowing one of the jurors, in company with one of the bailiffs, to go to a barbershop and get a shave early in the morning of October 16th.

The record on this action is based upon the evidence taken upon the motion for new trial and includes the testimony of the two barbers who were present in the barbershop at the time the juror was brought there by the bailiff, the juror himself and the bailiff. These four witnesses were substantially in accord in their testimony as to what occurred in the barbershop. The juror Wright never said a word all of the time he was in the barbershop and nothing was said to him by any one. The barbers did not know that he was on the jury which was deliberating the Dutton Case. As shown by the testimony of the witnesses, the substance of the entire conversation while the bailiff and juror were in the barbership is as follows: By the Bailiff: "Gentlemen, here is a man who

wants a shave." Later an inquiry of one of the barbers directed to the bailiff: "Are you through with the Dutton case?" The bailiff replied: "No, the jury is still out," followed by the inquiry, "How do they stand?" and the answer by the bailiff, "Nine and three." One of the barbers stated that he asked the bailiff if he knew which way the jury stood and the bailiff replied, "Well, they are not allowed to tell that."

The juror Wright testified that he got in the barber's chair and was being shaved and heard some conversation between the barbers and the bailiff, but could not remember what was said, and that he heard nothing to influence or sway him in any way in arriving at a verdict in the Dutton case.

This issue raises an interesting question which is one not easy to decide. We have held in many cases:

"Where the proof shows that the jury is permitted to separate after the case has been finally submitted, the defendant is entitled to the presumption that such separation has been prejudicial to him, and the burden is on the prosecution to show that no injury could have resulted therefrom to the defendant." Wilcox v. State, 69 Okla. Cr. 1, 99 P. 2d 531, 532; Sealy v. State, 59 Okla. Cr. 104, 56 P. 2d 903; Crow v. State, 39 Okla. Cr. 145, 263 P. 677; Chance v. State, 5 Okla. Cr. 194, 113 P. 996; Goins v. State, 9 Okla. Cr. 35, 130 P. 513.

The action of the bailiff in taking this juror to a barbershop is something that would not have been permitted to have been done if the jury had inquired of the court for permission to do so as it entails too many risks of having outside influences brought to bear which might possibly creep into the jury room and affect the verdict. However, after fully considering all of the evidence upon this point, it is our conclusion that the state has fully met the burden of showing that no prejudice resulted

to the defendant by reason of the fact that this one juror was allowed to get a shave. Wright was not known to either of the barbers. A sworn officer of the court was with him continuously. Everything that was said or done at the barbershop was fully developed by the examination of the four witnesses and there appears nothing occurred which would have influenced any one. A verdict was not reached for several hours after this occurrence. As hereinabove stated, there is no record of the evidence filed with this court and no contention made here that the evidence did not support the verdict. In the absence of such a record and in view of the evidence on this issue before the court, it is our conclusion that the defendant was not prejudiced by reason of this act.

The above three assignments of error being the only ones presented by the defendant and none of them being of sufficient merit to justify a reversal of the judgment of conviction, it is ordered that the judgment and sentence of the district court of Seminole county be affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.