307 P.2d 887

**STATE of Utah, Plaintiff and Respondent,**

v.

**Ernest HINES and Johnnie Leach, Defend-
ants and Appellants.**

No. 8346.

Supreme Court of Utah.

Feb. 28, 1957.

Louis M. Haynie, Ben D. Browning, Salt Lake City, for appellants.

E. R. Callister, Jr., Atty. Gen., Vernon B. Romney, Salt Lake City, for respondent.

CROCKETT, Justice.

Ernest Hines and Johnnie Leach were jointly charged, tried and convicted of the crime of robbery. Both appeal, claiming some common and some separate grounds of error.

Evidence for the state was to the effect that during the night of October 8, 1954, the defendants, who are Negroes, approached Charles T. Hales, who was putting license plates on his companion's car on a street in downtown Salt Lake City. In response to an inquiry as to his destination, he informed them that he was going to Redwood Road in the western part of town. This suited the defendants' purpose as they wanted a ride out that way to a tavern to attend a "jam session."[1] Hales agreed to take them, and on the way out they invited him to join them, which he did. Some time after midnight they left the tavern, but instead of driving the defendants back to town himself, Hales went to the house on Redwood Road where he and LeRoy D. Crow, his companion in a batching arrangement, lived.

As Hales did not feel well, he procured Crow to drive the defendants back uptown. On the way the defendants requested him to stop for a purpose of nature. They got out of the car, went around to the driver's side, dragged Crow from the car, and robbed him of his wallet and personal effects. Crow broke away and ran across a field to a warehouse where he called the police. Meanwhile the defendants took the car and drove away. Shortly thereafter, Leach was apprehended in the vicinity of the crime and Hines was arrested some distance away, near the hotel where he was staying. Crow and Hales, as witnesses for the state, each identified both Hines and Leach as the men involved in the escapade just described.

The errors assigned by the defendants which are common to both, appear to be of little consequence insofar as any effect they might have had upon the defendants having a fair trial. They are: (1) That the record fails to show that the court admonished the jurors when they were allowed to go to dinner, and (2) That the record is likewise silent as to any oath being given Miriam Parker, the court reporter, when the judge asked her to take the two lady jurors to the rest room.

The burden is upon the appellants to show error.[2] In the absence of any indication in the record that the court did not administer the proper oath and admonition, it will be presumed that he did so.[3] The

1. A session at which modern jive, be-bop, rock'n roll or other such music is played.

2. State v. Burns, 79 Utah 575, 11 P.2d 605.

3. Elkins v. State, 29 Okl.Cr. 175, 233 P. 491.

record does disclose that at the first recess of the trial, and at several subsequent ones, the court gave the usual and proper admonition not to discuss matters pertaining to the trial outside of the courtroom, nor to communicate with others, nor to permit others to communicate with them concerning such matters. It is further to be observed that the reporter is an officer of the court, fully acquainted with court procedures and the proper conduct of jurors. Requesting her to accompany the lady jurors was done as a precaution by the judge that the privacy of the jury be assured. In the absence of any indication of impropriety, to assume that some irregularity occurred which prevented the defendants from having a fair trial, would require us to indulge in conjecture. This is neither warranted under the circumstances, nor within our prerogative should we desire to do so.

The only separate error of any consequence claimed by defendant Hines concerns the post-trial reading of some testimony to the jury. Upon being returned to the courtroom during deliberations, the foreman advised the court that some of them wanted the testimony of Crow and Hales re-read. The attorney for Hines had gone back to his office. When the judge notified him by phone of the request, he indicated no objection to the re-reading of the testimony and said he saw no need for him to be present. Hines then also talked to his attorney on the phone, thereafter discussed the matter with the court, and consented that the testimony be re-read without his counsel being present.

On appeal, through his counsel (different from trial counsel) Hines contends: (1) That it was error to permit the testimony to be re-read in the absence of his counsel; (2) That in doing so the testimony was heard out of context and was therefore given undue emphasis; (3) That the court should have protected him by insisting that his counsel be present during such proceeding.

No authority is cited, and we are acquainted with none, which holds that the granting of such a request is error. On the contrary, the well-recognized general rule is that it is within the trial court's discretion to grant the jury's request to re-read parts of the testimony.[4] It is, of course, essential that the court observe caution that evidence is not so selected, nor used in such a manner, that there is likelihood of it being given undue weight or emphasis by the jury which would confer an unfair advantage on either party. No such circumstance existed here.

Nor do the authorities relied on by defendant Hines support his contention that in spite of the acquiescence of himself

4. State v. Jennings, 131 Or. 455, 282 P. 560; State v. Logue, 115 Kan. 391, 223 P. 482; Garcia v. State, 96 Tex.Cr.R. 324, 257 S.W. 558.

and counsel, the court was nevertheless under the duty to require defendant's attorney to be present when the testimony was reread. While it was necessary for the defendant to be present at all stages of the trial, there is no absolute requirement that the attorney be there. He was entitled to be, if he and the defendant so desired, but there was nothing he could then do to assist the court, the jury or the defendant which would have any effect upon that part of the proceedings. In the absence of any showing of disadvantage to the defendant in the procedure followed, it was no abuse of discretion nor variance from proper procedure for the trial court to have the testimony read to the jury without insisting that defendant's counsel be present.[5] Consequently, we find no prejudicial error as to the defendant Hines.

The principal error assigned by appellant Leach presents a problem of a different character, viz.: the extent of the trial court's duty to see that one accused of crime is given representation by counsel.

Prior to preliminary hearing the court appointed an attorney, Mr. Sidney G. Reid, to represent both Hines and Leach, which he did at such hearing. On December 22, 1954, twelve days before the trial date in the district court, Mr. Reid advised the court that defendant Leach no longer wanted his services and that he desired to withdraw as his counsel, which the court approved. In discussing his request for another attorney, the only explanation Mr. Leach offered for his objection to Mr. Reid was that he had "lost confidence" in him. The court advised the defendant that he had full confidence in Mr. Reid and would not appoint another, and that if he did not want the services of counsel appointed by the court, he would have to arrange for his own, to which Mr. Leach replied: "If the court don't appoint one, I will be tried without one." Two further requests for another attorney were also rejected by the court. On the day of the trial Mr. Leach still insisted that he wanted other counsel. He did not accept the help of Mr. Reid, who was willing to aid him and sat at counsel table representing the other defendant, Hines. The trial proceeded and Mr. Leach acted as his own counsel and cross examined witnesses.

█ Leach's present counsel contends here that before the trial court could properly refuse to appoint another attorney, it had a duty to inquire into the reasons for his objection to the one appointed, and to determine whether it was bona fide. As authority for this, he cites Ex parte Masching.[6] In that case the defendant claimed he had been bedridden with illness for three weeks

5. See State v. Neal, 1 Utah 2d 122, 262 P.2d 756; Duffey v. State, 124 Neb. 23, 245 N.W. 1; McClellan v. State, 118 Tex.

Cr.R. 473, 40 S.W.2d 87; Garcia v. State, 96 Tex.Cr.R. 324, 257 S.W. 558.

6. 41 Cal.2d 530, 261 P.2d 251.

and unable to get counsel. The court denied his request for a continuance. The California Supreme Court held that the trial court's failure to at least question the defendant as to the validity of his statement and the summary forcing him to trial was a denial of his right to counsel. The facts in that case are materially at variance from those in the instant one and the ruling is not persuasive here, although we are in accord with the principle that the trial court should manifest reasonable solicitude that one accused of crime should have counsel if he desires one.

The trial judge is the source in which the layman accused of crime must seek refuge for protection of this and other rights assured him under the law. In his role as the guardian of liberties he should maintain equanimity and deal objectively with those appearing before him in spite of lack of courtesy or even disrespect sometimes manifest by the indiscreet. It must be appreciated that it is not uncommon for persons in the toils of the law to be found limited in several ways. Natural endowments and schooling, or deficiencies therein, and the buffetings of fortune often have been such that it is small wonder that under the pressures of prosecution for crime their conduct is not as genteel as might be desired; nor that they fail to appreciate that common courtesy brings its rewards in consideration from others.

Fortunately, by reason of his training, experience and advantaged position, the trial judge is able to keep himself above the strife and antagonisms which embroil the less fortunate, and despite offenses to which umbrage might be taken, to administer even-handed justice to the end that the interests of the state, and the rights of the accused are safeguarded. Under traditions sacred to our system of justice it is of the utmost importance that the basic rights and privileges of all be respected, including those accused of crime, no matter how evident guilt may be. To echo a sentiment expressed by Mr. Justice Douglas: respecting the rights, the importance and the dignity of every man, even the least worthy, raises the stature of us all and builds an atmosphere of trust and confidence in the processes of law and the administration of justice.[7]

The privilege of an accused to the assistance of counsel is one of the fundamental rights. It is more than empty form; it means the right to a reputable member of the bar who is willing, and in a position to honestly and conscientiously represent the interests of the defendant and to present such defenses as are available to him under the law and consistent with the ethics of the profession. If the court appoints one such

---

7. See opinion of Mr. Justice Douglas in Stein v. People of State of New York, 346 U.S. 156, 207, 73 S.Ct. 1077, 97 L. Ed. 1522, referring to statement of Mr. Justice Frankfurter; Sec. 12, Art. I, Utah Const.; Sec. 77-22-12, U.C.A.1953.

attorney that is sufficient, and the judge may assume his duty is fulfilled unless the defendant makes known some good reason why the counsel appointed could not fairly or properly represent him, or something comes to the court's attention which might reasonably so indicate. If anything of this nature does appear, then the court should examine into whether the attorney can and will properly represent the accused. The matter of representation of the defendant by counsel must depend upon the circumstances of the individual case, which, because of his intimate contact with the proceeding and the parties concerned, the trial judge is in a particular position of advantage to appraise. What should be done with respect thereto must of necessity rest within his sound discretion, and should not be disturbed on appeal unless it is made to appear that there was a plain abuse thereof.

Without detailing the repartee between the court and this defendant, which we spare advisedly, perusal thereof gives the definite impression that the defendant Leach had ample opportunity to disclose any good reason for objecting to Mr. Reid as his counsel, had any such existed. The statement that he had "lost confidence" in Mr. Reid, unsupported by any other fact, was apparently not regarded by the trial court as any good reason at all and impelled him to conclude that his objection was not born of any genuine concern about the ability of Mr. Reid to properly represent him, but was for an ulterior purpose. In such event he could, of course, properly refuse the request for other counsel.[8]

It is obvious that if an accused could arbitrarily refuse the counsel offered by the court simply because he did not approve, and insist that another be appointed, he could similarly refuse successive attorneys ad infinitum, which would permit him in effect to select his own attorney, and also to obstruct proceedings indefinitely.[9]

■ Upon the basis of the record before us we cannot say that the defendant was deprived of any constitutional right, nor that there was any miscarriage of justice, by reason of the trial court's refusal to appoint another attorney.

■ ■ Appellant Leach's other assignment of error worthy of mention is directed at the instruction given to the jury pertaining to his failure to take the witness stand. The point is raised that no exception was taken to it which ordinarily would preclude its being considered on appeal. However, we point out that this defect is not necessarily fatal. As stated by Justice Wolfe in State v. Peterson,[10] if the instructions are

8. People v. Adamson, Cal., 210 P.2d 13; United States ex rel. Mitchell v. Thompson, D.C., 56 F.Supp. 683.

9. See United States v. Gutterman, 2 Cir., 147 F.2d 540, 157 A.L.R. 1221.

10. 121 Utah 229, 240 P.2d 504, 507; see also State v. Cobo, 90 Utah 89, 60 P.2d 952; State v. Smith, 90 Utah 482, 62 P. 2d 1110; and McCall v. Kendrick, 2 Utah 2d 364, 274 P.2d 962.

erroneous, " * * * to such an extent that they would, if followed by the jury, prevent a fair or proper determination of the issues, we may notice the error without exception having been taken." This is more particularly so in a criminal case and where the defendant is without benefit of counsel. Analogous to this is the provision in our civil rules, No. 51, which provides that, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto," but limits the rule thus: "Notwithstanding the foregoing requirement, the appellate court, in its discretion and in the interest of justice, may review the giving or the failure to give an instruction."

Conceding that the instruction which is subjected to criticism is not a model of what an instruction on that subject should be, however, it did advise, " * * * you are further instructed that the law expressly provides that no presumption adverse to the defendant is to arise from the mere fact that he does not place himself upon the witness stand," which sufficiently covers the subject. When considered in its entire context and together with the other instructions, as they must be, we do not believe it would give any such misimpression to the jury that it could be considered substantial error prejudicial to the rights of the defendant which would warrant a reversal of his conviction. Such prejudice will not be presumed from the mere existence of irregularity or error. We have an express statutory provision, Sec. 77–42–1, U.C.A.1953, which provides that:

"After hearing an appeal the court must give judgment without regard to errors or defects which do not affect the substantial rights of the parties. If error has been committed, it shall not be presumed to have resulted in prejudice."

Affirmed.

McDONOUGH, C. J., and WADE, J., concur.

WORTHEN and HENRIOD, JJ., concur in the result.